Opinion issued April 26, 2012



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-10-01073-CV

———————————

Mary Gret McKenzie d/b/a Gen’s Antiques and Mary Gret McKenzie, Appellants

V.

Positive
Action International, Inc. d/b/a Grace Hart & Company, Appellee



 



 

On Appeal from the 80th District Court

Harris County, Texas



Trial Court Case No. 2008-16738

 



MEMORANDUM OPINION

          This
case arises from a dispute between a lessee and its commercial landlord.  Appellants, Mary Gret
McKenzie d/b/a Gen’s Antiques and
Mary Gret McKenzie (collectively, “Gen’s Antiques”), leased
retail spaces in an antiques mall from appellee, Positive Action International,
Inc. d/b/a Grace Hart & Co.
(“Hart & Co.”).  Gen’s Antiques
alleged multiple causes of action, including constructive eviction and breach
of contract, and Hart & Co. alleged a counterclaim for breach of
contract.  The jury returned a verdict in
favor of Hart & Co.  Following a
series of post-trial rulings, the trial court entered a final modified judgment
ordering that both parties take nothing. 
In eight points of error, Gen’s Antiques argues that: (1) the
jury’s findings that Hart & Co. did not constructively evict it and did not
breach the leases were erroneous because “there was overwhelming and uncontroverted evidence” against
those findings; (2) the trial court erred in denying its motion for judgment
notwithstanding the verdict on its constructive eviction and breach of contract
claims; (3) the jury’s adverse finding on its breach of contract claim was also
improper because Hart & Co.’s failure to pay Gen’s Antiques its sales
proceeds constituted a breach of the leases; (4) the jury’s finding that Hart
& Co. did not breach an oral agreement was incorrect because Hart & Co.
failed to pay Gen’s Antiques its sales proceeds; (5) the jury erred in failing
to award damages on its constructive eviction, breach of lease, and breach of
oral agreement claims; (6) the trial court erred in refusing a jury question on
its breach of trust claim; (7) the jury erred in failing to award it attorney’s
fees based on its claims of breach of written and oral contracts; and (8) the
trial court erred in denying its motion for new trial based on improper jury
argument.

          Hart & Co. asserts five
cross-points, arguing that the trial court: (1) erred in entering judgment that
it take nothing based on the argument that “no live pleading” supported its
recovery for breach of contract and attorney’s fees; (2) abused its
discretion in finding “no live pleadings”; (3) erred in modifying the judgment
based on an issue not objected to at trial and therefore waived by Gen’s
Antiques; (4) erred in modifying the judgment based on an issue not presented
in a motion for new trial and therefore waived by Gen’s Antiques; and (5) abused
its discretion in exercising plenary power to modify the judgment based on an
issue not presented in a motion for new trial.

          We affirm
in part and reverse and remand in part for the trial court to render judgment
on the jury’s verdict.

                                                                                                                                                                
Background

A.              
Relationship
of Parties 

Hart & Co. operated an antiques mall and leased spaces
to various merchants for the sale of antiques and collectibles.  Gen’s Antiques leased space consisting of four
booths and two window spaces and paid the related security deposits consisting
of one month’s rent.  Gen’s Antiques also
signed a lease and paid a security deposit for two more desirable window spaces
that it planned to move into in February 2008.

In addition to providing the terms of booth location,
rent, and permissible uses of the premises, the leases included the following
terms relevant to this case:

·       
TERM . . . This lease shall be
month-to-month.

 

·       
Lessee [Gen’s Antiques] has deposited with
Lessor [Hart & Co.] [an amount equal to one
month’s rent] as security for the prompt performance by Lessee of each and
every duty of Lessee under this Lease. 
Under the circumstances of any default by Lessee, Lessor may apply or
retain all or any part of such security to remedy the default or to reimburse
Lessor for any amount which Lessor may spend as a result of the default. . . .

 

·       
Any of the following occurrences or acts shall
constitute an event of default under this lease:

 

A.
If Lessee, at any time during the Term, shall . . . fail to make any payment of
rent, late fees or other sum herein required to be paid by Lessee . . . or
fails to observe or perform any other provisions hereof for thirty days after
Lessor shall have delivered to Lessee written notice of such failure, or

 

.
. . .

 

B.
If the premises shall have been abandoned, provided that the premises shall be
deemed to have been abandoned if Lessee transfers a substantial part of
Lessee’s operations, business and personnel from the premises to another
location or fails to carry on its business at the premises for a period of two
consecutive weeks.

 

·       
In the event [a] default shall have occurred,
Lessor shall have the right at its election, then or at any time thereafter, to
give [L]essee written notice of Lessor’s election to
terminate this Lease on a date specified in such notice.  Upon the giving of such notice, this Lease
and the estate hereby granted shall expire and terminate on such date as fully
and completely and with the same effect as if such date were the date hereinbefore
fixed for the expiration of the Term, and all rights of Lessee hereunder shall
expire and terminate and Lessor shall forfeit Lessee’s deposit.

 

·       
This agreement shall be deemed to include the
Positive Action International Inc., dba Grace Hart
& Co., policy (a copy of which has been provided to Lessee) and Exhibits A
attached hereto and made a part hereof. 
In the event of a conflict between this lease and the Positive Action
International Inc., dba Grace Hart & Co., policy,
this lease will prevail.

 

·       
Unless otherwise provided herein, any notice,
tender, or delivery to be given hereunder by either party to the other may be
effected by placing such notice, tender or delivery in the party’s mail slot at
Positive Action International Inc., dba Grace Hart
& Co., by personal delivery in writing or by registered or certified mail,
postage prepaid, return receipt requested, and shall be deemed received as of
mailing.

 

·       
Lessor expressly grants Lessee the right to
terminate this lease before the end of the lease period.  If Lessee elects to exercise this right,
Lessee must:

1.                
Provide written notice to Lessor on or before
the first of the month prior to the month Lessee intends to vacate the
premises.

2.                
Pay Lessor all sums for rent, advertising, work
days, etc. as due.

3.                
Vacate the premises as otherwise described in
this lease.  Lessor agrees to refund
Lessee’s deposit (subject to the conditions of Section 3.2 [providing the
Lessor may keep all or any part of deposit in event of any default by Lessee])
if Lessee elects to exercise his right to terminate as described above.

 

(Emphasis in
original).

Exhibit A, attached to the lease and expressly
incorporated into the terms of the lease, provided general policies regarding
specific deadlines and late fees for paying rent, the number of days the lessee
is required to work at the antique mall and related policies, guidelines for
proper maintenance of the space, and store hours.  It also provided that lessees like Gen’s
Antiques were required to conduct all sales through the “front desk at Grace
Hart & Co.,” but it did not provide specific procedures for the
reimbursement of payments made to Hart & Co. for the lessee’s merchandise.

This suit arose from a dispute that occurred on December
11, 2007.  Gen’s Antiques argues that Grace
Hart, president of Hart & Co., became irrational and told McKenzie and her
business partner, Gregory Nolte, to leave the premises and never come
back.  Hart & Co. argues that McKenzie
is the one who became angry and chose to leave the mall without giving notice
as required by the leases.

Hart & Co. sent Gen’s Antiques a letter dated December
12, 2007 to the address “805 Sandman, Houston, TX.”  This letter stated, 

This is to inform
you that since you defaulted on the contract and moved out on your own
volition, you automatically forfeit all your deposits.  Please refer to [the section of the lease
describing acts constituting default].

Effective with
this letter, neither you, Gret Morgan McKenzie or
your associate Gregory Joseph Nolte are permitted on or in the premises of
Grace Hart and Company. . . .

          All further communications are to be
presented to attorney Walter Wright . . . and not to us.  Any checks that you may have coming will be
mailed within 5 days of our normal processing date.

          We are sorry that you have elected to
take this action and we wish you success in whatever plans you have for the
future.

 

Hart & Co.’s attorney sent a second letter to both
McKenzie and Nolte dated December 17, 2007. 
The letter stated that it was in reference to

your
trespass upon and around the premises of Grace Hart & Company at 313 West
19th Street; your slander and/or libel of Ms. Hart and Grace Hart & Co.
directed toward the dealers in the shop and more especially toward prospective
shop patrons; your terroristic threats upon Ms. Grace Hart and your disorderly
conduct and drunkenness in and around the premises of Grace Hart & Company.

 

The December 17, 2007 letter went on
to inform McKenzie and Nolte that “your inappropriate and uncalled for actions
. . . will no longer be tolerated.”  They
were advised not to enter the premises under any circumstances or confront,
make comment to, or interfere with any employees, dealers, or patrons.  The letter concluded:

Your
recent conduct and acts of slander and/or libel have already resulted in an
actionable cause of action against you for monetary and punitive damages.  Your theft and misuse of the confidential
business records of Grace Hart & Co. will result in criminal charges being
filed against you personally under all applicable criminal statutes and laws
that apply in Harris County, in the City of Houston, in the State of Texas or
in the United States.

 

B.              
Pleadings of Parties

On March 31, 2008, Gen’s Antiques filed suit against Hart
& Co., alleging breach of contract for Hart & Co.’s “forceful and
unlawful eviction without notice,” breach of lease for failing to comply with
the terms of the leases, breach of trust and money had and received for Hart
& Co.’s alleged failure to tender payment of funds from the sales of Gen’s
Antiques’ merchandise, defamation and business disparagement, conversion,
theft, intentional infliction of emotional distress, and attorney’s fees.  Gen’s Antiques subsequently amended its
petition, dropping its claims for defamation, business disparagement, civil
theft, and intentional infliction of emotional distress and adding a claim for
constructive termination of the lease.

On July 1, 2009, Hart & Co. filed its “First Amended
Original Answer and Counter Claim.”  It
included general and verified denials of Gen’s Antiques’ claims and also
asserted counterclaims for interference with contract rights and business
relations.  Hart & Co. subsequently
filed a second amended answer and counterclaim, adding a claim for breach of
contract for Gen’s Antiques’ alleged breach of the lease agreements.  Specifically, Hart & Co. alleged that it
had “performed all of the promises and covenants of this agreement for which it
was promisor.  In the alternative, if
need there be, [Hart & Co.] has substantially performed all of the promises
and convenants concurrent or conditions precedent
have occurred or been excused for which [it] was the obligor.”  Hart & Co. alleged that Gen’s Antiques
breached the lease by failing “to pay all rent[,] late
fees[,] and charges due” under the lease, by failing to provide the “required
written notice thirty days prior to terminating the month to month tenancy and
vacating the property,” and by behaving “in a manner which is abusive toward
customers, other dealers, or Lessor or their guests.”  Hart & Co. also claimed it was entitled
to attorney’s fees on its breach of contract claim.

On March 29, 2010, Hart & Co. filed its third amended answer
and counterclaim.  This document again
alleged various verified denials and affirmative defenses, and it again
included Hart & Co.’s claim of interference with contract rights and business
relations.  This counterclaim was related
in paragraphs fourteen and fifteen.  In language
identical to that used in Hart & Co.’s second amended answer and
counterclaim, paragraph sixteen alleged that Hart & Co. and Gen’s Antiques
entered into several lease agreements. 
Again tracking the same language as in its second amended counterclaim,
paragraph seventeen began, “Counter-Plaintiff has totally performed all of the
promises and covenants of this agreement for which it was the promisor.”  However, paragraph seventeen cut off after
stating, “In the alternative, if need there be, Counter-Plaintiff[.
. . .]”  The next page begins with
paragraph twenty-two, stating, “Further pleading Counter-Plaintiff avers that Counter-Defendants, Mary Gret
McKenzie d/b/a Gen’s Antiques and Mary Gret McKenzie [have]
withheld the last month’s rent on grounds that the security deposit is security
for unpaid rent.  Counter-Plaintiff avers
that Counter-Defendants, Mary Gret McKenzie d/b/a
Gen’s Antiques and Mary Gret McKenzie [have] acted in
bad faith and the Counter-Plaintiff is entitled to relief pursuant to [section]
93.010 of the Property Code.”

C.              
Trial on Merits and Jury’s Findings

The jury trial occurred in April 2010.  Greg Nolte, one-time partner and current
employee of McKenzie and Gen’s Antiques, testified about the general structure
of an antique mall.  He stated that Hart
& Co. leased spaces to various antique and collectibles dealers, that they
all “worked collectively” to operate the mall, and that “all the sales are
collected at a single source at the front door and then the sales are
distributed on a weekly basis.”  He
testified that each dealer would get a “settlement report” or record of its
sales and was then “issued a check for that total amount.”  He testified that, as of December 2007, Gen’s
Antiques leased four booths and two window spaces from Hart & Co. and that
Gen’s Antiques had paid security deposits totaling $1,421.75 on the four booths
and $150 for the window spaces.  He
further testified that Gen’s Antiques had paid a $160 deposit for two more
desirable window spaces because it anticipated moving into those spaces in
February 2008.

Nolte testified that the dispute with Hart & Co. involved
a special event called “Mistletoe Madness,” which was a holiday event that many
businesses in the Heights area, where Hart & Co. is located, participated
in.  Nolte and McKenzie agreed to provide
wine and seafood étouffée, as they had on previous
occasions, in exchange for Hart & Co. paying half the estimated cost “a
couple of weeks” in advance and the other half “a few days before” the
event.  Nolte testified that, on this
occasion, Hart & Co. did not pay him in a timely manner.  He later acknowledged on cross-examination
that a Hart & Co. employee brought him an envelope that he refused to
accept on Friday, December 7, 2007, the day of the event, testifying that he
was too busy at that time—“the product was already purchased and I was cooking
rice for a thousand people at that point.” 
Hart & Co. argued that the envelope contained the cash payment owed
to Nolte, and Nolte agreed that it “probably” did.

He stated that he and McKenzie arrived to work their
scheduled day at the antiques mall on December 11, 2007, and were summoned to Grace
Hart’s office.  Hart paid them for their
expenses related to the Mistletoe Madness event.  On cross-examination, Nolte further stated
that he and McKenzie were upset at not having received the money sooner,
because they needed it to purchase wine and food prior to the day of the
event.  He testified that, in response to
Hart’s saying “here’s your money” and “throwing [the envelope] down on the
desk,” McKenzie said, “[I]t’s the principle of the thing, Grace.”  Following this brief exchange, Hart then
“started hitting the desk” and claiming, “[Y]ou are
saying I have no principles.”  Nolte
testified that

Ms.
Hart said get out, get out of my store now. 
I raised my hand, I said excuse me. 
Are you saying get out of your office or get out of your store, and she
said get out of the store now.  Then she
got on her phone and she was screaming, they’re blocking the door, they’re
killing me, they are assaulting me.  I quickly thought, we need to get out on the
public floor, we do not need to raise this volatile
situation any further.  We need to
retreat quickly.  It was irrational
behavior.

 

Nolte testified that Hart’s
irrational behavior continued once they left Hart’s office, as Hart followed
him and “continu[ed] to
harass” him.  He testified that Hart
pointed at McKenzie and said, “[Y]ou’re an
alcoholic,” then pointed at him and screamed, “[Y]ou are mean people.” 
He testified that McKenzie asked about the return of their deposits, and
Hart indicated that her husband, Grant Hart, would be at the antiques mall that
afternoon to return the deposits.  Nolte
stated that he and McKenzie then left the premises and that they never received
the deposits.

Nolte testified that Hart & Co. did not give Gen’s
Antiques any notice that it needed to leave the store prior to that incident
and that he and McKenzie had expected to continue working with Hart & Co.
through the busy Christmas season and in the future.  He pointed out that Gen’s Antiques had just
had business cards printed with the address at Hart & Co.  

Nolte also testified regarding his and McKenzie’s receipt
of the December 12, 2007 letter and stated that he was “stunned” to read that
Hart & Co. claimed that Gen’s Antiques moved out of its own volition.  He testified that Gen’s Antiques did not take
any legal action at that time, however, because he and McKenzie “still thought
we were going to get paid for our sales and that was the big deal.”  Nolte further related that Gen’s Antiques was
expecting its “weekly sales previous to December 11th when we were kicked out,
plus several thousand dollars, 3,000 or whatever plus in layaway sales at that
time that we had due to be collected over the next several months.”  He testified that Gen’s Antiques received one
check for approximately $2,100 “shortly after we received this letter.”  He testified that, after receiving that check
via certified mail at the address on Sandman,[1]
Gen’s Antiques did not receive any further checks.

He also testified regarding his impressions upon
receiving, on February 20, 2008, the letter dated December 17, 2007.  He testified that he was, “[a]gain, shocked,
I couldn’t believe the terroristic threats et cetera that I was accused of in
this letter.”  He stated that he could
not recall any event or occurrence that precipitated the writing of that letter
and that the “only reason I had re-entered or approached to enter the premises
. . . was to deliver furniture” within the week after Gen’s Antiques was
evicted from the property.  He testified
that he advised Hart on December 12, 2007, as Gen’s Antiques was moving out of
the property, that he would need to return with furniture that was on
layaway.  He also testified that after
Gen’s Antiques moved out of Hart & Co.’s premises on December 12, it put
all of the merchandise into storage. 
Following the receipt of the letter dated December 17, 2007, Gen’s
Antiques contacted Hart & Co.’s lawyer to request its deposits, rents, and
costs of moving and storing its merchandise. 
Nolte testified that Gen’s Antiques discovered the existence of other
correspondence sent by Hart & Co. and the remaining settlement statements
only after suit was filed, during Grace Hart’s deposition.  Based on that information, Gen’s Antiques
calculated that Hart & Co. owed it $3,109.09 for sales of Gen’s Antiques’
merchandise that had been previously collected by Hart & Co..

          On
cross-examination, Nolte acknowledge that Gen’s Antiques received one letter
and one check from Hart & Co. at 805 Sandman, but he denied ever seeing the
four other certified mail envelopes containing the settlement statements and
checks that Hart & Co. had mailed to that address.  He testified that “all of our business mail
goes to P.O. Box 980217.”  However, Nolte
also acknowledged that the address listed for Gen’s Antiques with the State Comptroller
of Accounts for sales tax purposes in February 2008, around the same time Hart
mailed some of the remaining checks, was the address at 805 Sandman.  

McKenzie also testified. 
She confirmed that Gen’s Antiques leased space from Hart & Co. and
that she listed a post office box address on each of the leases with the intent
that it be used for purposes of business correspondence.  She testified that, although she owned the
property at 805 Sandman, she did not live there during the time in question
because the house needed “a lot more construction to then get move-in ready. .
. .”  

Regarding the events of December 11, 2007, McKenzie
testified that, after Grace Hart handed over the envelope containing Nolte’s
reimbursement for expenses related to Mistletoe Madness, Hart said to McKenzie,
“[Y]ou don’t like me, do you?”  McKenzie testified that she responded, “[W]hether I like you or not has nothing to do with the fact
that you didn’t give us our money when you said you were.  I said it’s about the principle.”  McKenzie testified that Hart then began
pounding her fists on the desk and screaming and eventually told her “get out,
get out now.”  McKenzie testified that
Nolte asked, “[D]o you mean get out of your office or do you want us to get out
of this store?”  Hart “screamed again,
get out ofthis store. 
Get out of this store now.” 
McKenzie further testified that Hart called her husband and told him, “[T]hey
are trying to kill me, they are assaulting me, they will not let me out of my
office, they’re blocking the door,” in spite of the fact that she and Nolte
were not blocking the door or assaulting or threatening her in any manner.

McKenzie testified that she and Nolte decided they needed get
out to the front of the store and that Hart followed behind them and yelled, “[Y]ou’re an alcoholic. 
And then she yelled at Greg, you’re a mean person.”  McKenzie then crossed to the other side of
the store and asked the dealer who was working at the desk on that side to come
“[b]e a witness that this woman has just thrown us out.”  She also asked the bookkeeper to witness Hart’s
remarks that she was throwing Gen’s Antiques out of the antique mall and that
she had called McKenzie an alcoholic.[2]  McKenzie testified that she made these
statements to the two witnesses in front of Hart and that “Hart never denied
any of it.”  She then told Hart that she
expected to get her deposits back that afternoon, and Hart responded that her
husband, Grant Hart, would bring them that afternoon.  McKenzie testified that she and Nolte left at
that time, purchased packing materials, and returned to begin packing up.  Grant Hart never arrived with the deposit
money.  She acknowledged that “[t]here
were no dealers on the 11th or 12th moving their items in” to Gen’s Antiques’
booths and window spaces.  She further
testified that Gen’s Antiques moved out of Hart & Co. because “[Hart] threw
us out.  And we would not stay there
because the lady . . . acted very crazy.” 
She testified that Gen’s Antiques vacated the property involuntarily.

Regarding the letter dated December 12, 2007, McKenzie
further testified that when she received it she thought, “[Y]ou must be kidding me. 
She knows we know she threw us out.” 
She was similarly shocked upon receiving the letter dated December 17,
2007 and thought that Hart was lying about the events referenced in that letter.  McKenzie also testified that she did not
receive the four letters that Hart & Co. sent by certified mail with the
remaining settlement statements and checks.

McKenzie further testified regarding Gen’s Antiques’
damages resulting from the events of December 11, 2007 and the amount of the
deposits Gen’s Antiques had paid in accordance with the terms of the
leases.  This testimony was consistent
with the damages and amounts related by Nolte.

On cross-examination, McKenzie testified that she had some
personal experience with the eviction process as a result of her ownership of
rental property, and she acknowledged that Gen’s Antiques was not removed from
Hart & Co.’s premises through any formal or legal process.  She “was just told to get out and get out now.”
 She also testified again that she never
saw the envelopes containing the checks sent by Hart & Co. and that she did
not recall receiving any slips from the post office attempting to deliver them.  She opened the envelopes in court and
confirmed that they contained settlement statements and checks from Hart &
Co. to Gen’s Antiques.  McKenzie also
confirmed that the address registered with the Texas Comptroller’s Office in
February 2008 and her voter registration address was 805 Sandman.

Grace Hart testified, consistent with Nolte’s testimony,
that Hart & Co. and Gen’s Antiques entered into leases for four floor
spaces and two window spaces that were in effect in December 2007 and that
Gen’s Antiques had paid the deposits associated with those leases.  She acknowledged that the address McKenzie
listed on the leases was a post office box and not the address on Sandman.

Hart testified that she did not “kick out” Gen’s
Antiques.  She testified that, following
the incident on December 11, when Gen’s Antiques began packing up its
merchandise, she asked another dealer, Cathy Merrill, to call other dealers and
invite them to display merchandise in Gen’s Antiques’ spaces.  She testified that she did not begin this
process until December 12, the day that Gen’s Antiques removed all of its
merchandise.  She stated that she did
this because “I had half my shop empty practically, all that whole side and all
the windows and it was the holidays.  And
I was terrified, of course.  So I told
Cathy . . . [that] every dealer that can [could] bring stuff to fill that side
up and you get all the money that you make from those places so that I wouldn’t
have an empty store.”

Regarding the letter dated December 17, 2007, Hart
testified that she and her husband asked their attorney to send it because
“[w]e wanted them to stay away from us totally and completely.  We wanted to make a statement that they
needed to just leave us alone.”  She was
concerned that McKenzie “was going to be contacting our dealers and starting
more trouble than there was already,” and she did not want McKenzie and Nolte “to
hang around in the front [of the property] smoking cigarettes and talking to
our dealers.”  She further testified that
she believed the letter conveyed her intent that if McKenzie or Nolte returned
to the premises or attempted to contact her dealers, she would pursue further
action, and that she and her husband “felt we had to be strong because they
were pretty powerful and we felt like we had to be strong.”

Hart testified that she attempted to distribute to Gen’s
Antiques its sales proceeds following the incident on December 11, 2007, and
she acknowledged that Hart & Co. continued to send the checks and
settlement statements by certified mail, requiring the recipient’s signature,
to the Sandman address in spite of the fact that previous letters were returned
undelivered.  Hart testified that she
believed that they were delivered but that McKenzie refused to sign for them or
accept them.  She testified that she used
the certified mail procedure that she did because she was concerned about
security, and she testified that she was not familiar with the procedure for a
recipient to sign for a delivery to some location where the recipient would not
be physically present, like a post office box.

Attorneys for both parties testified regarding their
attorney’s fees.  Gen’s Antiques’
attorney testified that his firm had billed Gen’s Antiques for $74,618.45 in
connection with this case, not including the trial or “billable expenses,” and
he provided detailed testimony about his qualifications and other information
about the firm’s representation of Gen’s Antiques.  He also testified that expenses from trial
would be approximately $12,000, and he provided specific testimony regarding
the factors he considered in reaching the total amount of attorney’s fees.

Hart & Co.’s attorney, Jeffrey Gillespie, testified
regarding his own attorney’s fees.  Gen’s
Antiques did not object to his testifying on this topic.  He testified regarding his qualifications and
that he has been paid a total of $5,000 by Hart & Co., but that he believed
the total value for the work performed on the breach of contract claims was
$15,000.  He testified that he did not
keep time records of the work he performed for Hart & Co., as he usually
billed his clients on a flat-rate basis. 
He also testified that the amount of $15,000 represented only work he
did on the breach of contract claim because “the only matter which I’m entitled
to attorney’s fees is on a claim for breach of contract.”  Gillespie acknowledged that he began
representing Hart & Co. in April 2009, a little more than a year after
Gen’s Antiques’ counsel became involved.

After the close of evidence, Hart & Co. moved to
nonsuit its tortious interference claim and its claim that McKenzie conspired
with Gen’s Antiques to tortiously interfere with Hart
& Co.’s contractual and business relations, which the trial court
granted.  Gen’s Antiques amended its
pleadings, with leave of the trial court, to assert a claim that Hart & Co.
breached an oral agreement with Gen’s Antiques by failing to turn over sales proceeds
and layaway funds collected by Hart & Co.

The proposed charge contained questions regarding (1)
whether Hart & Co. constructively evicted Gen’s Antiques, (2) whether Hart
& Co. complied with the terms of the lease agreements, (3) if it found
Gen’s Antiques was not constructively evicted, whether Gen’s Antiques complied
with the terms of the lease agreements, (4) whether Hart & Co. complied with
an oral agreement with Gen’s Antiques regarding distribution of sales proceeds,
(5) if it found in favor of Gen’s Antiques, the damages suffered by Gen’s
Antiques related to lost rent, moving costs, storage costs, lost profits, and
lost deposits, (6) if it found in favor of Hart & Co., the amount of damages
related to Gen’s Antiques’ breach of the leases, (7) whether Hart & Co.
converted property from Gen’s Antiques, (8) the amount of damages for
conversion, if any, (9) if it found in favor of Gen’s Antiques on the issue of
conversion, whether any harm to Gen’s Antiques was caused by malice, (10) if it
found malice, the amount of exemplary damages to be assessed in favor of Gen’s
Antiques, (11) if it found in favor of Gen’s Antiques on the issues of breach
of the lease or oral agreement, the amount of reasonable and necessary
attorney’s fees to be awarded to Gen’s Antiques, and (12) if it found in favor
of Hart & Co. on the issue of breach of the lease, the amount of Hart &
Co.’s reasonable and necessary attorney’s fees.

At the charge conference, Gen’s Antiques requested that
the trial court include jury questions on the issues of breach of trust, breach
of lease, money had a received and civil theft.[3]  The trial court refused to include questions
on these issues.  Gen’s Antiques did not
present any objection to the presence of a jury question on Hart & Co.’s counterclaims
for breach of contract and attorney’s fees. 
Hart & Co. objected to the form of jury question number eleven on attorney’s
fees, which the trial court overruled. 
Hart & Co. also sought to have a question included asking the jury
if it found that Hart & Co. had tendered payment to Gen’s Antiques, which
the trial court also rejected. 

Following the parties’ closing arguments, the jury found
that: (1) Hart & Co. did not constructively evict Gen’s Antiques from the
premises; (2) Hart & Co. did not fail to comply with the terms of the
lease agreements in effect in December 2007; (3) Gen’s Antiques failed to
comply with the terms of the lease agreements; and (4) Hart & Co. did not
fail to comply with an oral agreement with Gen’s Antiques regarding
distribution of sales proceeds.  It found
$1 in damages for Hart & Co. based on Gen’s Antiques’ failure to comply
with the terms of the leases and $15,000 as Hart & Co.’s reasonable and
necessary attorney’s fees incurred on this claim.  Finally, the jury found that Hart & Co.
did not convert property from Gen’s Antiques. 
The jury did not answer questions five, eight, nine, ten, or eleven
regarding damages for Gen’s Antiques because the need to provide an answer to
those questions was expressly contingent on a finding in favor of Gen’s
Antiques on the issues of breach of lease, breach of oral agreement, or conversion.

D.              
Post-Trial Motions and Entry of Judgment

Gen’s Antiques moved for judgment notwithstanding the
verdict (“JNOV”), arguing that it had presented evidence supporting its claims
that Hart & Co. breached the oral and written contracts and constructively
evicted it.  This motion also argued that
Hart & Co. was not entitled to damages for breach of contract or for
attorney’s fees, but it did not argue that these claims were not supported by
the pleadings.  On August 6, 2010, the
trial court denied Gen’s Antiques motion for JNOV.

Hart & Co. moved to disregard the jury’s answer to
question six, regarding damages that resulted from Gen’s Antiques’ failure to
comply with the terms of the lease.  Hart
& Co. argued that the jury’s answer of $1 was not supported by the record
because it had presented evidence of a much greater amount of damages in the
form of January rent payments.[4]  Gen’s Antiques responded by arguing that,
while several witnesses testified regarding the amount of rent that Gen’s
Antiques paid to Hart & Co., Grace Hart did not testify that Hart & Co.
was owed rent for the month of January or about the amount of rent due.

On August 31, 2010, the trial court entered judgment
reciting the findings of the jury and finding “that the jury answer to Question
Number Six should be disregarded since it is against the great weight and
preponderance of the evidence and is inconsistent with recoverable damages
under Texas law, and that [Hart & Co.] should have judgment against [Gen’s
Antiques] for its damages from breach of the lease in the amount of $1571.75,
comprised of the rent due for January 2008, together [with] prejudgment
interest and reasonable and necessary attorney’s fees in the amount of
$15,000.”  It also ordered that Gen’s
Antiques take nothing from Hart & Co.

Finally, it ordered, “in equity, that [Hart & Co.] pay
the amount of $3,109.09 to [Gen’s Antiques], which represents the money
collected by [Hart & Co.] for the benefit of [Gen’s Antiques] for sales
proceeds from [Gen’s Antiques’] merchandise which the Court finds was held
under a constructive trust.”

On September 10, 2010, Gen’s Antiques moved for a new
trial, arguing that it was entitled to judgment in its favor on the issues of
constructive eviction, breach of lease, breach of contract, breach of oral
contract, conversion, and attorney’s fees. 
It also argued that Hart & Co. was not entitled to attorney’s fees
because the award of attorney’s fees was based on the allegedly erroneous
finding that Gen’s Antiques breached the leases, because Hart & Co. failed
to “present its claim for breach of lease to Gen’s prior to the filing of same
as required by [Texas Civil Practice and Remedies Code section] 38.002(2),” and
because it failed to present legally and factually sufficient evidence of its
attorney’s fees.  Finally, Gen’s Antiques
argued that a new trial was appropriate based on improper jury argument made by
Hart & Co.’s attorney.  Gen’s
Antiques did not argue in this motion for new trial that Hart & Co. failed
to plead a breach of contract claim or a claim for attorney’s fees.

On September 30, 2010, Gen’s Antiques moved for remittitur
of the $15,000 in attorney’s fees that the trial court’s judgment had awarded
to Hart & Co., arguing that the evidence was insufficient to support that
award.  The motion for remittitur again
argued that the trial court erred in awarding attorney’s fees under Civil
Practice and Remedies Code section 38.001 because Hart & Co. failed to
present its claim to Gen’s Antiques or its agent as required by section 38.002.

On December 8, 2010, Hart & Co. argued in a letter
brief that it presented its claim to Gen’s Antiques in its December 12, 2007
and December 17, 2007 letters.  It argued
in the alternative that Gen’s Antiques waived this issue by failing to plead a
verified denial or object to the admission of evidence of Hart & Co.’s
attorney’s fees.

In a letter dated December 9, 2010, Gen’s Antiques’
counsel argued for the first time that the trial court’s award of damages to
Hart & Co. for breach of contract and the resulting attorney’s fees was
improper because it “has not pled breach of contract, breach of lease or any
fact pattern which might constitute reasonable notice of such causes of action
in Hart & Co.’s Third Amended Petition filed on March 29, 2010. . . .”  Gen’s Antiques also argued that the December
12 and December 17, 2007 letters did not make a demand for any payment or
otherwise provide notice of Hart & Co.’s breach of contract claim.  Gen’s Antiques supplemented this letter on
December 10, 2010, addressing the fact that Hart & Co.’s third amended
petition and counterclaim skipped from paragraph seventeen to paragraph twenty-two.  It stated that “it was not uncommon for Hart
& Co. to file mis-numbered pleadings.  We assumed that was the case with Hart &
Co.’s Third Amended Answer and Counter-Claim; which, of note, also has two
paragraphs elevens (11’s).”

On December 13, 2010, the trial court signed a
modification of the final judgment.  This
judgment recited the findings of the jury and the fact that the trial court had
previously granted a “partial JNOV” on Hart & Co.’s behalf “to award
$1,571.75 based on the uncontroverted evidence that such sum was the amount of
one-month’s rent.”  It went on to state,
“The court now finds that there was no live pleading on file at the time of
trial that asserted breach of contract allegations and no leave to file a trial
amendment was timely filed by [Hart & Co.] to support the award of actual
damages and attorney’s fees for breach of contract.  The court now vacates that Judgment and
Orders that [Hart & Co.] take nothing on [its] breach of contract claim.”

The trial court then recited that its previous judgment had
found that a constructive trust existed with regard to sales proceeds from
Gen’s Antiques’ merchandise in the amount of $3,109.  It stated, 

The
Court granted leave of court for [Gen’s Antiques] to file a trial amendment
alleging Constructive Trust.  The Court
further found that [Hart & Co.] attempted tender of those funds prior to
the lawsuit being filed and re-tendered those funds and [Gen’s Antiques]
accepted those funds, prior to entry of judgment.

 

The trial court concluded that
both parties take nothing by their claims against the other, stating,

It
is therefore, ORDERED, ADJUDGED, and DECREED that Plaintiff, Mary Gret McKenzie d/b/a Gen’s Antiques and Mary Gret McKenzie, individually, take nothing from Defendant,
Positive Action International, Inc. d/b/a Grace Hart & Co. and that Counter
Plaintiff, Positive Action International, Inc. d/b/a Grace Hart & Co. take
nothing from Counter Defendant, Mary Gret McKenzie
d/b/a Gen’s Antiques and Mary Gret McKenzie.  IT IS FURTHER ORDERED, ADJUDGED, and DECREED
that Costs of Court are assessed against the party incurring same.

 

On January 12, 2011, Gen’s Antiques requested modification
of this judgment, arguing that the trial court’s December 13, 2010 judgment
erroneously stated that the trial court allowed it to file a trial amendment
pleading a constructive trust.  Gen’s
Antiques stated that it did not amend its pleadings with respect to that cause
of action, and it argued that the trial court erred in concluding that a
constructive trust existed with regard to the money Hart & Co. collected
from the sale of its merchandise.  Gen’s
Antiques also moved again for a new trial on its claims of constructive
eviction, breach of written and oral contracts, conversion, and attorney’s
fees, and it again argued that a new trial was required because of the
allegedly improper jury argument of Hart & Co.’s attorney.

Both parties filed notices of appeal.

                                                                                                  
Sufficiency of Evidence on Jury’s Findings

In its first point of error, Gen’s Antiques argues that “there
was overwhelming and uncontroverted evidence” against the jury’s answers to
questions number one and two—whether Hart & Co. constructively evicted it
from the premises and whether Hart & Co. breached the terms of the leases.  In its third point of error, Gen’s Antiques
argues that, because Hart & Co. failed to pay Gen’s Antiques its sales
proceeds, Hart & Co. breached the written leases, and the jury’s finding
that Hart & Co. did not breach the leases was incorrect.  In its fourth point of error, Gen’s Antiques
argues that the jury’s finding on question number four was incorrect because
Hart & Co. failed to pay Gen’s Antiques its sales proceeds.  In its fifth point of error, Gen’s Antiques
argues that the jury erred in failing to award damages on its constructive
eviction, breach of lease, and breach of oral agreement claims.  Finally, in its seventh point of error, Gen’s
Antiques argues that the jury erred in failing to award it attorney’s fees
based on its claims of breach of written and oral contracts.  We construe these points as arguments that
the evidence supporting the jury’s verdict was legally and factually
insufficient.

A.              
Standard of Review

In conducting a legal-sufficiency review, we credit
favorable evidence if a reasonable factfinder could
and disregard contrary evidence unless a reasonable factfinder
could not.  City of Keller v. Wilson, 168 S.W.3d
802, 827 (Tex. 2005); Brown v. Brown,
236 S.W.3d 343, 348 (Tex. App.—Houston [1st Dist.] 2007, no pet.).  We consider the evidence in the light most
favorable to the finding under review and indulge every reasonable inference
that would support it.  City of Keller, 168
S.W.3d at 822.  We sustain a
no-evidence contention only if: (1) the record reveals a complete absence of
evidence of a vital fact; (2) the court is barred by rules of law or of
evidence from giving weight to the only evidence offered to prove a vital fact;
(3) the evidence offered to prove a vital fact is no more than a mere
scintilla; or (4) the evidence conclusively establishes the opposite of the
vital fact.  Id. at 810; Merrell Dow Pharms., Inc. v. Havner, 953
S.W.2d 706, 711 (Tex. 1997).

When an appellant complains of the legal sufficiency of
the evidence supporting an adverse finding on which it had the burden of proof,
it must show that the evidence establishes, as a matter of law, all vital facts
in support of the issue.  Dow Chem. Co. v. Francis,
46 S.W.3d 237, 241 (Tex. 2001) (per curiam).  We must first examine the record for evidence
supporting the finding, and we then examine the entire record to determine if
the contrary proposition is established as a matter of law.  Id.  We sustain the issue only if the contrary
position is conclusively established.  Id. 

In reviewing a challenge to the factual sufficiency of the
evidence, we must consider and weigh all the evidence and should set aside the
judgment only if it is so contrary to the overwhelming weight of the evidence
as to be clearly wrong and unjust.  Arias v. Brookstone,
L.P., 265 S.W.3d 459, 468 (Tex. App.—Houston [1st Dist.] 2007, pet. denied)
(citing Cain v. Bain, 709 S.W.2d 175,
176 (Tex. 1986)).  When an appellant
attacks the factual sufficiency of an adverse finding, he must demonstrate that
the finding is against the great weight and preponderance of the evidence.  Francis,
46 S.W.3d at 242. 


Whether reviewing the evidence for legal or factual
sufficiency, we assume that jurors decided questions of credibility or
conflicting evidence in favor of the finding if they reasonably could do
so.  See
City of Keller, 168 S.W.3d at 819.  We do not substitute our judgment for that of
the factfinder if the evidence falls within this zone
of reasonable disagreement.  Id. at 822.

B.              
Jury Finding that Hart
Did Not Constructively Evict Gen’s Antiques and Related Damages and Attorney’s
Fees

Question one asked the jury, “Did Grace Hart & Co.
constructively evict Gen’s Antiques from the premises that are the subject of
the lease agreements in effect in December 2007?”  The jury was instructed:

A
mere notice to quit, followed by vacation of the premises by the tenant, does
not constitute constructive eviction[.]  In order to prove its claim of constructive
eviction a tenant must establish the following four elements[:]

 

1)
     an intention
of the landlord that the tenant no longer enjoy the premises;

 

2)
     a material
act by the landlord that substantially interferes with the intended use and
enjoyment of the premises;

 

3)
     the act
permanently deprives the tenant of the use and enjoyment of the premises; and 

 

4)
     the tenant
abandons the premises within a reasonable time after the commission of the act.[5]

 

Gen’s Antiques did not object to
this jury question.  Thus, the
sufficiency of the evidence must be measured by the jury charge.  See Romero v. KPH Consol., Inc., 166 S.W.3d 212, 221 (Tex. 2005).

          The
jury answered that Hart & Co. did not constructively evict Gen’s
Antiques.  Gen’s Antiques argues that the
evidence demonstrated that Grace Hart engaged in several acts “which
permanently deprived Gen’s [Antiques] from the use and enjoyment of its lease
space.”  Specifically, Gen’s Antiques
argues that the evidence established that: (1) Grace Hart “engaged in
irrational verbal and physical behavior on December 11, 2007 which caused”
McKenzie and Nolte “to fear for their physical safety”; (2) Hart encouraged
other dealers to move into “Gen’s Antiques’ space on December 12, 2007 which
substantially interfered with Gen’s use and enjoyment of the Premises and
precluded Gen’s from moving back into the space during the two week window of
time before Gen’s would have been liable for abandonment”; (3) Hart & Co.’s
December 12, 2007 letter “banned” Gen’s Antiques from entering the premises;
and (4) Hart & Co.’s December 17, 2007 letter also banned Gen’s Antiques
from the premises and “threatened Gen’s principals with criminal prosecution if
they merely entered the Premises.”  Gen’s
Antiques argues that these acts “show a pattern of harassing behavior by [Grace
Hart] toward Gen’s, which confirm Hart & Co.’s intent to evict Gen’s and to
permanently and swiftly deprive Gen’s of its lease space.”

          Conflicting
evidence was presented at trial.  Both
Nolte and McKenzie testified that Grace Hart became confrontational and
irrational on December 11, 2007, told them both to “get out, get out now,”
called McKenzie an alcoholic, and told both of them that they were “mean
people.”  

Hart, however, testified that she did not “kick out”
McKenzie and Nolte.  The letter dated
December 12, 2007 expressed her belief that McKenzie and Nolte moved out of
their own volition, in addition to stating that neither McKenzie nor Nolte was
permitted on the premises in the future. 
Hart further testified that she asked someone to begin calling other
dealers on December 12, 2007 to move their merchandise into the spaces being
vacated by Gen’s Antiques so that she would not have an “empty” store for the
busy Christmas season.  Nolte’s and
McKenzie’s testimony also indicated that when they were removing their
merchandise from the premises on December 12, 2007, no other dealers had placed
merchandise in their spaces at that time.

Gen’s Antiques bore the burden to establish that Hart
& Co. constructively evicted it from the premises; therefore, we first
examine the record for evidence supporting the jury’s finding.  See
Francis, 46 S.W.3d at 241.  Hart testified that she did not “kick out”
Gen’s Antiques, and the letter Hart & Co. sent to Gen’s Antiques dated
December 12, 2007 stated that Gen’s Antiques moved out of its own volition.  Hart also testified that she did not begin
asking other dealers to move their merchandise into Gen’s Antiques’ spaces
until December 12, 2007, the day that Gen’s Antiques packed and removed its own
merchandise.  McKenzie and Nolte both
testified that they removed Gen’s Antiques’ merchandise themselves and that no
other dealers had placed any merchandise in Gen’s Antiques’ space at the time
it vacated the premises, and McKenzie acknowledged that Hart & Co. did not
remove Gen’s Antiques through any formal means.

Hart testified that she sent the December 17, 2007 letter
in an effort to prevent McKenzie and Nolte from “hanging out” in front of the
store and contacting the other dealers after they had made the previous
decision to leave.  Given this evidence,
McKenzie’s and Nolte’s testimony that the only reason Gen’s Antiques vacated
its leased spaces was because they were told to “get out” by Hart and because
her irrational behavior made it impossible for Gen’s Antiques to carry out its
business on the premises cannot conclusively establish a constructive
eviction.  See id. (holding that reviewing court may
sustain legal sufficiency challenge to issue on which appellant had burden of
proof only if contrary position is conclusively established).

Considering and weighing all the evidence, we further
conclude that the jury’s finding that Hart & Co. did not constructively
evict Gen’s Antiques is not against the great weight and preponderance of the
evidence.  See id. at 242; Arias, 265 S.W.3d at 468. 
The jury’s finding on this question indicates that it found Hart’s
testimony and evidence credible and that it found McKenzie’s and Nolte’s
testimony and evidence not credible.  See City of Keller, 168 S.W.3d at 819
(stating, “Jurors are the sole judges of the credibility of the witnesses and
the weight to give their testimony.  They
may choose to believe one witness and disbelieve another,” and holding that
reviewing courts must assume jurors decided all credibility questions in favor
of verdict if reasonable human beings could do so).  We will not substitute our judgment for that
of the factfinder. 
See id. at
822.

The evidence supporting the jury’s finding on the issue of
constructive eviction is supported by legally and factually sufficient
evidence.  Because the jury found that
Hart & Co. did not constructively evict Gen’s Antiques, Gen’s Antiques cannot
establish that it was entitled to damages or attorney’s fees based on this
claim.

We overrule Gen’s Antiques’ first, fifth, and seventh
points of error as they relate to the jury’s finding on the constructive
eviction claim.

C.              
Jury Finding that Hart &
Co. did not Breach the Leases and Related Damages and Attorney’s Fees

In question number two, the jury was asked, “Did Grace
Hart & Co. fail to comply with the terms of the lease agreements in effect
in December 2007?”  The jury answered,
“No.”  As we have already discussed, the
evidence was legally and factually sufficient to show that Hart & Co. did
not constructively evict Gen’s Antiques. 
Gen’s Antiques also argues that it could not have been deemed to abandon
the spaces until two weeks after December 11, 2007 under the terms of the
leases and that Hart & Co. breached the leases by failing to pay Gen’s
Antiques its sales proceeds.

Gen’s Antiques argues that, under the terms of the leases,
it could not have been deemed to have abandoned the premises until the
expiration of two weeks after the complete removal of all inventory or the
failure to do business, and, thus, “[w]ithin those
two weeks, but for Hart & Co.’s causing other dealers to fill Gen’s space
with merchandise, Gen’s had the option of returning the same or other inventory
into its space at Hart & Co.”  The
relevant portion of leases provides various acts constituting “events of
default,” such as a lessee failing to pay rent, and it also provided that
default occurs:

[i]f the premises shall have been abandoned, provided that
the premises shall be deemed to have been abandoned if Lessee transfers a
substantial part of Lessee’s operations, business and personnel from the
premises to another location or fails to carry on its business at the premises
for a period of two consecutive weeks.

 

The plain language of this provision indicates that a default
occurs when a premises is abandoned.  It
further provides a space will be “deemed” to have been abandoned if a lessee
transfers a substantial part of its operations to another location or fails to
carry on its business at the premises “for a period of two consecutive weeks.”  It does not provide an unequivocal right to a
two-week period in which a lessee like Gen’s Antiques may opt to return
merchandise following its decision to remove all of its business from the
premises.  Thus, as a matter of law, Gen’s
Antiques cannot demonstrate that Hart & Co. violated the terms of the
leases by encouraging other dealers to move merchandise into the empty spaces
following Gen’s Antiques’ removal of its items. 
See Francis, 46 S.W.3d at 241.

Gen’s Antiques also argues that Hart & Co. breached
the leases by failing to pay its sales proceeds.  We first observe that the leases and
incorporated documents contain no provisions regarding the nature of this
obligation or the method for reimbursing Gen’s Antiques for sales of its
merchandise completed at Hart & Co.’s central cash register.  Thus, as a matter of law, Gen’s Antiques cannot
demonstrate that any act of Hart & Co. relating to the payment of sales
proceeds violated the terms of the leases. 
See id.  

Gen’s Antiques further argues that the leases provide the
address to which Hart & Co. was obligated to send all business
communications—namely, the post office box address provided on the bottom of
each lease.  However, the terms of the
leases provided that 

any
notice, tender, or delivery to be given hereunder by either party to the other
may be effected by placing such notice, tender or delivery in the party’s mail
slot at Positive Action International Inc., dba Grace
Hart & Co., by personal delivery in writing or by registered or certified
mail, postage prepaid, return receipt requested, and shall be deemed received
as of mailing.

 

The leases contain no provision requiring
delivery of any “notice, tender, or delivery” to a particular address, and they
provide for multiple methods for delivery, including personal delivery or
delivery by registered or certified mail. 
As a matter of law, Gen’s Antiques cannot establish that Hart & Co.’s
attempt to mail the settlement statements and checks to the address on Sandman,
rather than the post office box, violated the terms of the lease.  See id.

Thus, the jury’s finding that Hart & Co. did not fail
to comply with the terms of the leases is supported by sufficient
evidence.  Because the jury found that Hart  & Co. did
not breach the leases, Gen’s Antiques cannot establish that it was entitled to
damages or attorney’s fees based on this claim.

We overrule Gen’s Antiques’ first, fifth, and seventh
points of error as they relate to the jury’s finding on the breach of lease
claim.

D.              
Jury Finding that Hart &
Co. Did Not Breach an Oral Agreement and Did Not Convert Gen’s Antiques’
Property by Failure to Pay Sales Proceeds

Question four asked, “Did Grace Hart & Co. fail to
comply with an oral agreement with Gen’s Antiques regarding distribution of
sales proceeds from sale of Gen’s Antiques’ merchandise?”  The jury was instructed on the formation of
an agreement: “In deciding whether the parties reached an agreement, you may
consider what they said and did in light of the surrounding circumstances,
including any earlier course of dealing. 
You may not consider the parties’ unexpressed thoughts or
intentions.”  The jury answered, “No,”
finding that Hart & Co. did not fail to comply with an oral agreement with
Gen’s Antiques. 

In question number seven, the jury was asked, “Did Grace
Hart & Co. convert property from Gen’s Antiques?”  The jury was instructed:

“Conversion” is
the unauthorized and unlawful assumption and exercise of dominion and control
over the personal property of another to the exclusion of, or inconsistent
with, the owner’s rights.

 

“Owner” means a person who:

(1) acquired the
property through purchase or other means;

(2) had legal possession of the property; or

(3) had a right to immediate possession of the property.

 

“Property”
includes money.

 

The jury answered, “No.”  

1.                
Breach of oral agreement

To prevail on its cause of action for breach of an oral
agreement, Gen’s Antiques was required to prove: (1) the
existence of a valid contract; (2) its own performance or tender of
performance; (3) Hart & Co.’s breach of contract;
and (4) its damages as a result of the breach.  See Prime Prods., Inc. v. S.S.I. Plastics, Inc.,
97 S.W.3d 631, 636 (Tex. App.—Houston [1st Dist.] 2002, pet. denied).  The elements of a valid contract are (1) an
offer, (2) an acceptance, (3) a meeting of the minds, (4) each party’s consent
to the terms, and (5) execution and delivery of the contract with the intent
that it be mutual and binding.  Id. 
The elements of written and oral contracts are the same and must be
present for a contract to be binding.  Wal-Mart Stores, Inc. v. Lopez, 93 S.W.3d 548, 555 (Tex.
App.—Houston [14th Dist.] 2002, no pet.).  For an agreement to be enforceable,
there must be a meeting of the minds with respect to its subject matter and
essential terms.  Id.
at 556.  The determination of
a meeting of the minds, and thus offer and acceptance, is based on the
objective standard of what the parties said and did.  Id.

The
question of whether a contract contains all the essential terms for it to be
enforceable is a question of law.  Beal Banks, S.S.B. v. Schleider,
124 S.W.3d 640, 654 n.8 (Tex. App.—Houston [14th Dist.] 2003, pet. denied).  What terms are material or essential to a
contract are determined on a contract-by-contract basis, depending on the
subject matter of the contract at issue. 
T.O. Stanley Boot Co. v. Bank of El Paso, 847 S.W.2d 218, 221
(Tex. 1992) (“Each contract should be considered separately to determine its
material terms.”).

Nolte testified that “all the sales are collected at a
single source at the front door and then the sales are distributed on a weekly
basis.”  He testified that each dealer
gets a “settlement report” or record of its sales and is then “issued a check
for that total amount.”  Nolte also
testified generally that “all of our business mail goes to P.O. Box 980217,”
and his testimony seemed to indicate that, in the regular course of dealing, settlement
statements and checks were distributed in person or left at Hart & Co.’s
premises for pick up.  However, he did
not provide any testimony regarding a specific agreement as to how the settlement
reports and checks were to be distributed, especially in light of Gen’s
Antiques’ vacation of the premises.  Nolte also acknowledged that the address
listed for Gen’s Antiques with the State Comptroller of Accounts for sales tax
purposes in February 2008, around the same time Hart & Co. mailed some of
the remaining checks, was the address at 805 Sandman.

McKenzie also confirmed that the address Gen’s Antiques
registered with the Texas Comptroller’s Office in February 2008 and her own
voter registration address was at 805 Sandman. 
McKenzie did not provide any testimony regarding the terms by which Hart
& Co. was to distribute sales proceeds collected on behalf of Gen’s
Antiques.

Hart testified that she attempted to distribute to Gen’s
Antiques its sales proceeds following the incident on December 11, 2007, and
she acknowledged that Hart & Co. continued to send the checks and
settlement statements by certified mail, requiring the recipient’s signature,
to the Sandman address in spite of the fact that previous letters were returned
undelivered.  Hart testified that she
believed that they were delivered but that McKenzie refused to sign for them or
accept them.  She testified that she used
the certified mail procedure that she did because she was concerned about
security, and she testified that she was not familiar with the procedure for a
recipient to sign for a delivery to some location where she would not be
physically present, like a post office box.

It is undisputed that Hart & Co. was obligated to pay
sales proceeds to Gen’s Antiques for its merchandise that was sold through Hart
& Co.’s central cash register. 
However, the parties presented no testimony of the specific terms of how
these payments were to be delivered.  While
Nolte’s testimony implied that Gen’s Antiques and the other dealers typically
received their settlement statements and checks at the premises and that Gen’s
Antiques used the post office box for its business correspondence, this does
not establish that other reasonable methods of delivery were not also
contemplated by the parties.  Thus, Gen’s
Antiques failed to establish the specific terms of the meeting of the minds
between itself and Hart & Co. on the issue of method of paying sales
proceeds.  See Lopez, 93
S.W.3d at 556 (holding that for agreement to be enforceable,
there must be meeting of minds with respect to its subject matter and essential
terms).  

Assuming, without deciding, that these terms were not
essential and, thus, that the agreement to pay sales proceeds was enforceable,
the evidence that Hart & Co. tendered performance was legally and factually
sufficient.  See T.O. Stanley Boot Co.,
847 S.W.2d at 221 (stating that courts must determine what terms are material
or essential to contract on contract-by-contract basis, depending on subject
matter of contract at issue).  Hart
testified that she sent the settlement statements and checks to the address on
Sandman via certified mail requiring the recipient’s signature for security
reasons.  She knew that McKenzie had received
mail sent to that address on previous occasions, and it was the address where
McKenzie was registered to vote and the address that Gen’s Antiques had
registered with the comptroller for sales tax purposes.  The envelopes containing the settlement statements
and checks were returned unclaimed, and Hart sent them to her attorney.  

Although McKenzie and Nolte testified that Gen’s Antiques
never received the unclaimed envelopes containing the settlement statements and
checks, this testimony cannot conclusively establish that Hart & Co. failed
to tender performance or that it breached an oral agreement.  See
Francis, 46 S.W.3d at 241 (holding that reviewing court may sustain legal
sufficiency challenge to issue on which appellant had burden of proof only if
contrary position is conclusively established).

Furthermore, considering and weighing all the evidence, we
conclude that the jury’s finding that Hart & Co. did not breach any alleged
oral agreement regarding sales proceeds is not against the great weight and
preponderance of the evidence.  See id. at 242;
Arias, 265 S.W.3d at 468.  It was solely within the province of the jury
to weigh Hart’s testimony and postal records demonstrating that Hart & Co.
attempted to distribute to Gen’s Antiques its sales proceeds against McKenzie’s
and Nolte’s testimony that Gen’s Antiques never received those envelopes.  See
City of Keller, 168 S.W.3d at 819 (stating, “Jurors are the sole judges of
the credibility of the witnesses and the weight to give their testimony.  They may choose to believe one witness and
disbelieve another,” and holding that reviewing courts must assume jurors decided
all credibility questions in favor of the verdict if reasonable human beings
could do so).  We will not substitute our
judgment for that of the factfinder.  See id.
at 822.

Thus, the evidence supporting the jury’s finding that Hart
& Co. did not fail to comply with the terms of an oral agreement regarding
payment of sales proceeds is supported by legally and factually sufficient
evidence.  Because the jury found that Hart
& Co. did not breach an oral agreement, Gen’s Antiques cannot establish
that it was entitled to damages or attorney’s fees based on this claim. [6]

2.                
Conversion

Regarding Gen’s Antiques’ claim that Hart & Co.
converted its property by failing to pay the sales proceeds,
we likewise conclude that the evidence was legally and factually sufficient to
support the jury’s adverse answer.

The charge instructed the jury that conversion is “[t]he
unauthorized and wrongful assumption and exercise of dominion and control over
the personal property of another, to the exclusion of or inconsistent with the
owner’s rights.”  See Waisath v. Lack’s Stores, Inc., 474
S.W.2d 444, 447 (Tex. 1971).  To establish conversion of personal property, a plaintiff
must prove (1) the plaintiff owned, had legal possession of, or was entitled to
possession of the property; (2) the defendant, unlawfully and without
authorization, assumed and exercised dominion and control over the property to
the exclusion of, or inconsistent with, the plaintiff's rights; (3) the
plaintiff made a demand for the return of the property; and (4) the defendant refused
to return the property.  Tex. Integrated Conveyor Sys.,
Inc. v. Innovative Conveyor Concepts, Inc., 300 S.W.3d 348, 365–66 (Tex. App.—Dallas 2009, pet. denied).

As discussed
above, Hart testified that Hart & Co. attempted to mail the sales proceeds
to Gen’s Antiques.  Thus, Gen’s Antiques
cannot conclusively establish that Hart & Co. exercised dominion and
control over the payments inconsistent with Gen’s Antiques’ rights or that Hart
& Co. refused to return the property. 
See Francis, 46 S.W.3d
at 241 (holding that reviewing court
may sustain legal sufficiency challenge to issue on which appellant had burden
of proof only if contrary position is conclusively established).  Furthermore, as we have previously held that
the evidence was legally and factually sufficient that Hart & Co. attempted
to tender payment, the jury’s adverse finding on the issue of conversion was
not against the great weight and preponderance of the evidence.  See id.
at 242; Arias,
265 S.W.3d at 468.  Because the jury
found that Hart & Co. did not convert Gen’s Antiques’ property, Gen’s
Antiques cannot establish that it was entitled to damages or attorney’s fees
based on this claim.

We overrule Gen’s Antiques’ third, fourth, and fifth
points of error as they relate to Gen’s Antiques’ claims concerning payment of
the sales proceeds.

E.              
Jury Finding that Gen’s Antiques Breached the
Leases

Hart & Co. asserts several cross-points on appeal,
including a challenge to the trial court’s modified judgment that ordered that
it take nothing on its breach of contract claim and related attorney’s
fees.  Hart & Co. asks this Court to
reinstate the trial court’s award of $1,571.75 as damages on its breach of
contract claim.  Gen’s Antiques argues
that Hart & Co. failed to properly plead the issues of breach of contract
and related attorney’s fees. 
Alternatively, it challenges the legal and factual sufficiency of the
jury’s finding that it breached the terms of the leases.

1.                
Sufficiency
of pleadings

In its first and second cross-points on appeal, Hart &
Co. argues that the trial court erred in finding “no live pleadings” from it
alleging breach of contract and attorney’s fees and in modifying the judgment
to order that it take nothing on those claims. 
In its third and fourth cross-points, it argues that Gen’s Antiques
waived its complaint on this issue because it did not object at trial and did
not present this issue in its motion for new trial.  Thus, we first address the argument that Hart
& Co. failed to properly plead its counterclaims for breach of contract and
related attorney’s fees.

Hart & Co.’s second amended answer and counterclaim
contained causes of action for breach of contract and related attorney’s fees.  Those pleadings alleged that Hart & Co.
had “performed all of the promises and covenants of [the leases] for which it
was promisor.  In the alternative, if
need there be, [Hart & Co.] has substantially performed all of the promises
and convenants concurrent or conditions precedent
have occurred or been excused for which [it] was the obligor.”  Hart & Co. alleged that Gen’s Antiques
breached the lease by failing “to pay all rent[,] late
fees[,] and charges due” under the lease, by failing to provide the required
written notice thirty days prior to terminating the month-to-month tenancy and
vacating the property, and by behaving “in a manner which is abusive toward
customers, other dealers, or Lessor or their guests.”  Hart & Co. also alleged that it was
entitled to attorney’s fees on the breach of contract claim.

However, Hart & Co.’s third amended petition, filed
for the purpose of adding an affirmative defense to Gen’s Antiques’ defamation
claim, cut off after the beginning of paragraph seventeen, stating, “In the
alternative, if need there be, Counter-Plaintiff[. . . .]”  The next page began with paragraph twenty-two,
stating, “Further pleading Counter-Plaintiff avers that
Counter-Defendants, Mary Gret McKenzie d/b/a
Gen’s Antiques and Mary Gret McKenzie [have] withheld
the last month’s rent on grounds that the security deposit is security for
unpaid rent.”  Thus, any paragraphs
containing its breach of contract and related attorney’s fees counterclaim are
missing from the third amended petition, which was the live pleading at the
time of trial.

However, Grace Hart testified regarding Gen’s Antiques’
failure to comply with the terms of the leases, and counsel for Hart & Co.
advanced arguments that Gen’s Antiques breached its leases without objection by
Gen’s Antiques that such evidence and argument was not supported by the
pleadings.  Furthermore, the jury charge
contained questions asking whether Gen’s Antiques breached the leases and what
constituted reasonable and necessary attorney’s fees for Hart & Co. arising
from Gen’s Antiques’ breach.  Again,
Gen’s Antiques presented no objections to these questions.

We agree with Gen’s Antiques that Hart & Co.’s third
amended petition did not state a cause of action for breach of contract and
related attorney’s fees.  However, issues
not raised by the pleadings may be tried by the express or implied consent of
the parties.  See Tex. R.
Civ. P. 67; Moore v. Altra Energy Techs., Inc., 321
S.W.3d 727, 733 (Tex. App.—Houston [14th Dist.] 2010, pet. denied).  Rule of Civil Procedure 67 provides that
“[w]hen issues not raised by the pleadings are tried by express or implied
consent of the parties, they shall be treated in all
respects as if they had been raised in the pleadings.”  Tex.
R. Civ. P. 67.  Furthermore, Rule
of Civil Procedure 90 provides that “[e]very defect, omission or fault in a
pleading . . . [that] is not specifically pointed out . . . before the instruction
or charge to the jury . . . shall be deemed to have been waived by the party
seeking reversal on such account.”  Tex. R. Civ. P. 90.

We conclude that Gen’s Antiques waived its right to
complain that the charge to the jury was not supported by the pleadings by failing
to object before the instruction or charge to the jury.  See id.;
see also Murray v. O & A Exp., Inc.,
630 S.W.2d 633, 637 (Tex. 1982) (holding that party waived argument that
pleadings did not support charge submission by failing to make timely objection
to charge on that ground).  Thus, we conclude
that Hart & Co.’s counterclaims that Gen’s Antiques breached the terms of
the lease and that it was entitled to related attorney’s fees were tried by
consent.  See Tex. R. Civ. P.
67; Moore, 321
S.W.3d at 733.  Thus, the trial court erred in modifying
the judgment post-verdict to disregard the jury’s findings on these claims.

We sustain Hart & Co.’s first, second, third, and
fourth counter-points arguing that the trial court erred in modifying the
judgment to order that it take nothing based on Gen’s Antiques’ arguments that
“no live pleading” supported Hart & Co.’s claims.[7]

2.                
Sufficiency
of jury finding

Having determined that the issue of Hart & Co.’s
counterclaim was properly before the jury, we examine the sufficiency of the
jury’s finding.  In question three, the
jury was instructed, “If you answered “No” to Question No. 1 then answer
Question No. 3.  Otherwise, do not answer
Question No. 3.”  Question three asked,
“Did Gen’s Antiques fail to comply with the terms of the lease agreements in
effect in December 2007?”  The jury
answered, “Yes.”

Regarding Gen’s Antiques’ right to terminate the lease
before the end of the lease period, the leases provided:

Lessor
expressly grants Lessee the right to terminate this lease before the end of the
lease period.  If Lessee elects to
exercise this right, Lessee must:

 

3.                
Provide written notice to Lessor on or before
the first of the month prior to the month Lessee intends to vacate the
premises.

 

4.                
Pay Lessor all sums for rent, advertising, work
days, etc. as due.

 

5.                
Vacate the premises as otherwise described in
this lease.  Lessor agrees to refund
Lessee’s deposit (subject to the conditions of Section 3.2 [providing the Lessor
may keep all or any part of deposit in event of any default by Lessee]) if
Lessee elects to exercise his right to terminate as described above.

 

(Emphasis in
original).  The leases also
provided that the term of the leases was “month-to-month.”

Thus, under the terms of the lease, if Gen’s Antiques
moved out of its own volition before the end of the month of December, Gen’s Antiques
was required to provide written notice by the first of November.

As we have discussed above, there was conflicting evidence
regarding the circumstances under which Gen’s Antiques vacated the
premises.  While Nolte and McKenzie both
testified that they were evicted by Hart when she told them to “get out” and
because of her irrational behavior, Hart testified that she did not “kick out”
Gen’s Antiques and the letter she sent dated December 12, 2007 stated that
Gen’s Antiques moved out of its own volition. 
It is undisputed that Gen’s Antiques did not give written notice prior
to vacating the premises.  We concluded
that the evidence was legally and factually sufficient to support the jury’s
findings that Gen’s Antiques was not constructively evicted and that Hart &
Co. did not breach the terms of the leases. 
Under the same reasoning, we conclude that the evidence was likewise
sufficient to support the jury’s conclusion that Gen’s Antiques breached the
terms of the lease when it moved out on December 12, 2007 without giving prior
written notice.  See Francis, 46 S.W.3d at 241–42.

          We
overrule Gen’s Antiques’ challenge to this jury finding.

F.               
Jury Finding on Hart & Co.’s Damages for
Breach of Contract

Having concluded that the jury properly considered the
issue of Gen’s Antiques’ breach of the leases and that the evidence supporting
the jury’s finding of breach was supported by legally and factually sufficiency
evidence, we turn to the issue of Hart & Co.’s damages on this claim.  

1.                
Sufficiency
of jury finding

Gen’s Antiques argues that Hart & Co. was not entitled
to any damages resulting from Gen’s Antiques’ breach of the leases because Hart
& Co. did not present any evidence of damages.  

The jury was instructed, “If you have answered “Yes” to
Question No. 3, then answer Question No. 6. 
Otherwise, do not answer Question No. 6.”  Question six asked, “What sum of money, if
any, if paid now in cash, would fairly and reasonably compensate Grace Hart
& Co. for its damages, if any, that resulted from the failure to comply
with the terms of the lease agreements?” 
The jury answered, “$1.00.”

At trial, the parties introduced the terms of the leases
and Nolte testified regarding the rent that Gen’s Antiques paid.  According to Nolte’s testimony and the leases
in effect at the time Gen’s Antiques moved out of Hart & Co.’s premises,
Gen’s Antiques paid $1,571.75 per month in rent for four booth spaces and two
window spaces.  Hart testified that Gen’s
Antiques had paid its December 2007 rent and was in compliance with the terms
of the leases as of December 11, 2007. 
Hart further testified that, following Gen’s Antiques’ vacation of the premises
without notice, she was required to allow other dealers to use that space
without charging rent or other expenses in order to avoid having an “empty”
store during the busy Christmas shopping season.  Hart & Co. also sent several letters and
other mailings containing settlement statements and checks following Gen’s
Antiques’ departure.  McKenzie and Nolte
also testified that they worked a portion of the required days for the first
two weeks of December, but that they did not work the total number of days they
were required to work under the lease.

Thus, the record contained some evidence of Hart &
Co.’s damages and expenses related to Gen’s Antiques’ removal from the
property.  The jury’s finding that these
damages totaled $1 is supported by legally and factually sufficient
evidence.  See Francis, 46 S.W.3d at 241–42.

We overrule Gen’s Antiques’ challenge to this jury finding.

2.                
Trial
court’s partial JNOV disregarding jury’s answer

Hart & Co. asks that we reinstate the trial court’s
August 31, 2010 judgment awarding it $1,571.75 as rent that Gen’s Antiques was
obligated to pay as a result of its failure to comply with the terms of the
leases.  We review the grant or denial of
a motion for JNOV or a motion to disregard jury findings as a legal-sufficiency
challenge.  See City of Keller, 168 S.W.3d at 823.

As we discussed above, under the terms of the lease, if
Gen’s Antiques moved out of its own volition before
the end of the month of December, it was required to provide written notice by
the first of November to vacate the premises and it must pay all sums for rent
as due.  We have already concluded that
the jury’s finding that Gen’s Antiques breached the leases by vacating the premises
without prior written notice was supported by legally and factually sufficient
evidence.

However, the terms of the lease do not contain any
provisions granting payment of the next month’s rent if a lessee, such as Gen’s
Antiques, breaches the terms of the lease by moving out prior to the expiration
of the term without notice.  Rather, the
leases allow Hart & Co. to retain the deposits in the event of any
default.  The leases provided: “Under the
circumstances of any default by Lessee, Lessor may apply or retain all or any
part of such security to remedy the default or to reimburse Lessor for any
amount which Lessor may spend as a result of the default. . . .”  It is undisputed that Hart & Co. retained
the full amount of the deposits paid by Gen’s Antiques.  Thus, the terms of the leases themselves do
not support Hart & Co.’s claim that it was entitled to payment of January
rent, and Hart & Co. cannot, as a matter of law, establish that it was
entitled to damages on those grounds.

We overrule Hart & Co.’s argument that it was entitled
to $1,571.75 in damages representing January rent owed by Gen’s Antiques
following its breach of the leases.

G.             
Hart & Co.’s Attorney’s Fees

We have already concluded that Hart & Co.’s counterclaims
for breach of contract and the resulting attorney’s fees were properly before
the jury.  We now address Gen’s Antiques’
argument that the evidence supporting the jury’s finding that Hart & Co.
was entitled to $15,000 as its reasonable and necessary attorney’s fees was legally
insufficient.[8]

Hart & Co.’s attorney, Jeffrey Gillespie, testified
regarding his own fees.  He testified that
he has been licensed since 1981 and has extensive experience trying cases in
the Houston area.  He believed the value
for the work performed on the breach of contract claim from the time he started
working on the case in April 2009 through trial in April 2010 was $15,000, and
based on his knowledge and experience, this amount was reasonable and
necessary.  He testified that he did not
keep time records of the work he performed for Hart & Co., as he usually
billed his clients on a flat-rate basis. 
He also testified that the amount of $15,000 represented work he had
done on the breach of contract claim and that he would value the total time he
spent on the case much higher.  

Gillespie also stated that he has been paid a total of
$5,000 by Hart & Co., and he testified that he did not intend to invoice
Hart & Co. for any additional fees beyond the $5,000 it had already paid.  He testified, “I think my clients have a
sense that they owe me money.  And if
they have the ability to pay, I’ll consider it at that time.  But I’m not going to send them an invoice or
charge them any more monies.”

Gillespie acknowledged that he began representing Hart
& Co. in April 2009, a little more than a year after Gen’s Antiques’
counsel became involved.  Gen’s Antiques’
attorney testified that his firm had billed Gen’s Antiques for $74,618.45 in
connection with this case, not including the trial, and that the fees from trial
would be approximately $12,000.

We review a jury’s finding of the amount of reasonable and
necessary attorney’s fees incurred for sufficiency of the evidence.  See C.M. Asfahl Agency v. Tensor, Inc.,
135 S.W.3d 768, 801–02 (Tex. App.—Houston [1st Dist.] 2004, no pet.).  The reasonableness of attorney’s fees is a
question of fact, and “[w]e must be mindful . . . that
we are reviewing a jury’s verdict and may not substitute our judgment for that
of the factfinder.” 
Id. at 802 (citing Maritime Overseas Corp. v. Ellis, 971
S.W.2d 402, 406 (Tex. 1998) and Ragsdale
v. Progressive Voters League, 801 S.W.2d 880, 882 (Tex. 1990)); see also GuideOne
Elite Ins. Co. v. Fielder Rd. Baptist Church, 197 S.W.3d 305, 311 (Tex.
2006) (holding that reasonableness and necessity of attorney’s fees is question
of fact).  Furthermore, “we may draw upon
our common knowledge as justices of the court and our experience as lawyers and
judges.”  C.M. Asfahl Agency, 135
S.W.3d at 802.

In reviewing the reasonableness
of an award of attorney's fees, the reviewing court should consider: (1) the
time and labor required, the novelty and difficulty of the questions involved,
and the skill required to perform the legal service properly; (2) the
likelihood that the acceptance of the particular employment will preclude other
employment by the lawyer; (3) the fee customarily charged in the locality for
similar legal services; (4) the amount involved and the results obtained; (5)
the time limitations imposed by the client or by the circumstances; (6) the
nature and length of the professional relationship with the client; (7) the
experience, reputation, and ability of the lawyer or lawyers performing the
services; and (8) whether the fee is fixed or contingent on results
obtained or uncertainty of collection before the legal services have been
rendered.  Arthur
Andersen & Co. v. Perry Equip. Corp., 945 S.W.2d 812, 818 (Tex. 1997); C.M. Asfahl Agency, 135 S.W.3d at 802.  The factfinder is
not required to consider all of the factors in every case because the factors
are guidelines for the factfinder to consider, not
elements of proof.  Petco Animal Supplies, Inc. v. Schuster, 144 S.W.3d 554, 567 (Tex.
App.—Austin 2004, no pet.); see Academy
Corp. v. Interior Buildout & Turnkey Constr.,
Inc., 21 S.W.3d 732, 742 (Tex. App.—Houston [14th Dist.] 2000, no
pet.).  Thus, it is not necessary that
the record include evidence on each of these factors.  See Burnside Air Conditioning & Heating, Inc. v. T.S. Young Corp.,
113 S.W.3d 889, 897–98 (Tex. App.—Dallas 2003, no pet.); Academy Corp., 21 S.W.3d at 742.

Although the nature and extent of the attorney’s services
generally are expressed in terms of the number of hours and the hourly rate,
there is no rigid requirement that these facts must be introduced into evidence
to support a finding that attorney’s fees are reasonable and necessary.  Hays
& Martin, L.L.P. v. Ubinas-Brache, M.D., 192
S.W.3d 631, 636 (Tex. App.—Dallas 2006, pet. denied) (citing Burnside Air Conditioning, 113 S.W.3d at
897).  When, as here, a claim for
attorney’s fees is based on Chapter 38 of the Texas Civil Practice and Remedies
Code, “[i]t is presumed that the usual and customary
attorney’s fees . . . are reasonable,”
although the presumption may be rebutted. 
See Tex. Civ. Prac. & Rem. Code Ann.
§ 38.003 (Vernon 2008).

In conducting our legal-sufficiency review, we consider
the evidence in the light most favorable to the finding under review and
indulge every reasonable inference that would support it.  City of
Keller, 168 S.W.3d at 822.  Gillespie’s expert opinion, based on his
experience performing similar legal services in the same locality, was that
$15,000 was reasonable and necessary. 
The jury also received evidence on the nature
and length of the professional relationship between Gillespie and Hart &
Co., Gillespie’s experience, reputation, and ability, and the nature of his fee
arrangement with Hart & Co.  Although
Gen’s Antiques’ attorney testified that his own services resulted in $74,618.45
in fees plus approximately $12,000 incurred during trial, and he cross-examined
Gillespie regarding Gillespie’s testimony on attorney’s fees, he did not offer
any evidence controverting or rebutting Hart & Co.’s evidence that the fees
were reasonable and necessary.  Thus, we
conclude that there is more than a scintilla of evidence supporting the jury’s
award of $15,000 as reasonable and necessary attorney’s fees.  See id.
at 810.

We overrule Gen’s Antiques’ challenge to the legal
sufficiency of the evidence supporting the amount of reasonable and necessary
attorney’s fees awarded to Hart & Co. by the jury.

                                                                                                                                                              
Charge Error

In its sixth point of error, Gen’s Antiques argues that
the trial court erred in refusing to submit a jury question on breach of
trust.  Gen’s Antiques argues that “Hart
& Co. owed a duty to Gen’s to place sales proceeds in trust pending
disbursement, and then to disburse the funds to Gen’s.  The holding and use of Gen’s money in an
unauthorized manner constitutes a breach of trust and Gen’s suffered damages as
a direct result.”

The standard of review for alleged error in the jury
charge is abuse of discretion.  See Shupe v. Lingafelter, 192 S.W.3d 577, 579 (Tex. 2006) (per curiam).  “When a
trial court refuses to submit a requested instruction on an issue raised by the
pleadings and evidence, the question on appeal is whether the request was
reasonably necessary to enable the jury to render a proper verdict.”  Id.  Therefore, we will not reverse a jury verdict
for the trial court’s refusal to submit a question unless the refusal probably
caused the rendition of an improper judgment or probably prevented the
complaining party from presenting the case on appeal.  Columbia Rio Grande Healthcare, L.P. v. Hawley, 284 S.W.3d 851, 856
(Tex. 2009); Shupe,
192 S.W.3d at 579.  “Error in the
omission of an issue is harmless ‘when the findings of the jury in answer to
other issues are sufficient to support the judgment.’”  Shupe, 192 S.W.3d at 579 (quoting Boatland of Houston, Inc. v. Bailey, 609 S.W.2d 743, 750 (Tex. 1980)).

Gen’s Antiques argues that “Nolte, McKenzie and Ms. Hart
all testified that funds collected by Hart & Co., to be held by Hart &
Co. for Gen’s and then paid to Gen’s according to a set schedule (10 days in
arrears) were intentionally never sent to Gen’s.”  Gen’s further argues that “[t]he affirmative
refusal of the court to include a question to the jury regarding Hart &
Co.’s breach of trust affected the outcome of the jury’s verdict, to the
detriment of Gen’s [Antiques] (Gen’s could have also recovered exemplary
damages for Hart & Co.[’s] breach of fiduciary duty.)”

We have already concluded that Gen’s Antiques failed to
establish the particular terms of any agreement with Hart & Co. regarding
the method for payment of the sales proceeds. 
Likewise, the record contains no evidence that these monies were to be
held in trust, and it contains no evidence of the existence of a formal trust
between Hart & Co. and Gen’s Antiques. 
See Stauffacher
v. Coadum Capital Fund 1, LLC, 344 S.W.3d 584,
588 (Tex. App.—Houston [14th Dist.] 2011, pet. denied) (holding that “[a] trust
is created only if the settlor manifests an intention to create a trust”; “[a]
court has no authority to impose a trust unless the prerequisites of a trust
are satisfied”; and “a court cannot impose a trust when the parties contemplated
another relationship”).  Thus, the issue of breach of trust was not
raised by the evidence.  See Shupe, 192 S.W.3d at 579.

Furthermore, as we have already discussed, the jury found,
relative to another jury question, that Hart & Co. did not breach any oral
agreement regarding the payment of the sales proceeds.  We concluded that the evidence was legally
and factually sufficient to support the conclusion that Hart & Co.
attempted to tender payment of the sales proceeds prior to trial.  It is undisputed by the parties that, prior
to entry of the final modified judgment in this case, Gen’s Antiques accepted
Hart & Co.’s tender of the sales proceeds. 
Thus, we cannot conclude that the trial court’s refusal to submit a
question on breach of trust resulted in the rendition of an improper judgment
or that the trial court abused its discretion. 
See Hawley, 284
S.W.3d at 856; Shupe,
192 S.W.3d at 579.

We overrule Gen’s Antiques’ sixth point of error.[9]

                                                                                                                                              
Motion for New Trial

In its eighth point of error, Gen’s Antiques argues that
the trial court erred in refusing to grant a new trial based on improper jury
argument of Hart & Co.’s counsel.  Specifically,
Gen’s Antiques complains of specific instances of improper personal criticisms.  It argues that Gillespie “repeatedly
refer[red] to Mr. Nolte and Ms. McKenzie as liars, hiding behind paper and
lawyers,” that he improperly referred to Gen’s Antiques’ counsel “as a baseball
bat used to assault” and “as dogs sicced on” Hart
& Co., that Gillespie argued that “Ms. McKenzie refused to accept funds and
filed a lawsuit out of spite,” that Gillespie improperly “paint[ed] his client, a corporation, as being tormented and
living in fear of” Gen’s Antiques, and that Gillespie improperly questioned
counsel’s respect for the court and the jury by “bring[ing]
this crap down” to the trial court.

We review a trial court’s denial of a motion for new trial
for an abuse of discretion.  In re R.R., 209 S.W.3d
112, 114 (Tex. 2006).  A trial
court abuses its discretion when it acts in an arbitrary or unreasonable
manner, or if it acts without reference to any guiding rules or
principles.  Downer v. Aquamarine Operators, Inc.,
701 S.W.2d 238, 241–42 (Tex. 1985).

To obtain a reversal of a
judgment on the basis of improper jury
argument, a party must prove (1) an error (2) that was not invited or provoked,
(3) that was preserved at trial by a proper objection, motion to instruct, or
motion for mistrial, and (4) that was not curable by an instruction, a prompt
withdrawal of the statement, or a reprimand by the trial court.  Standard Fire Ins. Co. v. Reese,
584 S.W.2d 835, 839 (Tex. 1979); see also Phillips v. Bramlett, 288 S.W.3d 876, 883 (Tex. 2009) (“Appellate
complaints of improper jury argument must ordinarily be preserved by timely
objection and request for an instruction that the jury disregard the improper
remark.”) (citing Tex.
R. App. P. 33.1).  Typically,
retraction of the argument or instruction from the court can cure any probable
harm, but in rare instances the probable harm or prejudice cannot be
cured.  Living Ctrs. of Tex., Inc. v. Penalver, 256 S.W.3d 678, 680 (Tex. 2008) (per curiam).

A complaint of incurable argument may be asserted and
preserved in a motion for new trial, even without a complaint and ruling during
the trial.  Phillips, 288 S.W.3d at 883 (citing Tex. R. Civ. P. 324(b)(5)).  A party claiming incurable harm must persuade
the court that, based on the record as a whole, the offensive argument was so
extreme that a “juror of ordinary intelligence could have been persuaded by
that argument to agree to a verdict contrary to that to which he would have
agreed but for such argument.”  Id. (quoting Goforth v. Alvey, 271 S.W.2d 404, 404 (Tex.
1954)).  Incurable argument is “that
which strikes at the very core of the judicial process,” such as
“unsubstantiated attacks on the integrity or veracity of a party or counsel,
appeals to racial prejudice, or the like.” 
Id.  To prevail on a claim that improper
argument was incurable, the complaining party generally must show that the
argument by its nature, degree, and extent constituted such error that an
instruction from the court or retraction of the argument could not remove its
effects.  Penalver, 256 S.W.3d at 680–81.

It is well-established that counsel should refrain from
using pejorative terms and inflammatory epithets.  See Sw.
Greyhound Lines v. Dickson, 236 S.W.2d 115, 119 (Tex. 1951); Zurita v. Lombana,
322 S.W.3d 463, 482 (Tex. App.—Houston [14th Dist.] 2010, pet. denied).  However, counsel have
always been entitled to argue the facts of the case, including the
reasonableness of the evidence and any inferences made from the evidence.  Zurita, 322 S.W.3d at 482–83.  Furthermore, counsel are
given wide latitude when commenting on the state of the evidence.  Id.

Gen’s Antiques objected to two of the specific instances
about which it now complains on appeal. 
Gillespie argued, “Doesn’t [Gen’s Antiques’ attorney] have any respect
for this Court and you as the ladies and gentlemen of this jury not to bring
this crap down here?”  Gen’s Antiques
objected, arguing that personal attacks are inappropriate.  The trial court sustained the objected and
stated, “[L]et’s watch the
language during closing argument please.” 
Gillespie then apologized for the inappropriate remark.  The trial court’s ruling and reprimand and
Gillespie’s apology cured any probable harm from this remark.  See Penalver, 256 S.W.3d at 680; Reese,
584 S.W.2d at 839.

Gillespie also stated that McKenzie “sicced
her dogs on us through attorney’s fees” and that “[h]e deposed Grace Hart for
six hours.  You look through his time
records.  Six hours he deposed my
client.  Over what?  Just to keep her there and to grill her and
to embarrass her and to frustrate her and to get her mad.  Six hours at—.”  Gen’s Antiques objected, arguing, “It’s
argumentative, it’s outside the evidence, it’s not for the jury to
consider.”  The trial court stated, “It’s closing argument. 
I’ll overrule the objection. 
Proceed.”  At this point in
Gillespie’s closing argument, the trial court had, in addressing multiple
objections made by Gen’s Antiques’, admonished the jury on at least six
occasions that it was to consider only the evidence admitted during trial in
the form of testimony or documents and that the arguments of the attorneys did
not constitute evidence.  The trial court
had properly admonished the jury on multiple occasions regarding what constituted
evidence that it was allowed to consider, and although the trial court should
have sustained the objection here as well, any error is harmless given its
numerous other admonishments.  See Penalver, 256 S.W.3d at 680–81; Zurita, 322 S.W.3d at 482–83.

Gen’s Antiques failed to object during trial to the
remaining complaints it raises on appeal. 
Thus, Gen’s Antiques’ must persuade this Court that, based on the record
as a whole, the offensive argument was so extreme that a “juror of ordinary
intelligence could have been persuaded by that argument to agree to a verdict
contrary to that to which he would have agreed but for such argument.”  See
Phillips, 288 S.W.3d at 883; see also
Penalver, 256 S.W.3d at 680–81 (holding that
complaining party must show that argument “by its nature, degree, and extent
constituted such error that an instruction from the court or retraction of the
argument could not remove its effects”). 


Gen’s Antiques’ complains about various statements made in
the following argument:

[McKenzie
and Nolte] can hide behind their paper, they can hide behind their boxes, they
can hide behind their lawyers, and they can hide behind their lie, but what
they can’t hide from is the truth.  And
the truth is this is a case that [McKenzie] created of her own volition.  We did nothing to breach this lease
agreement.  She got mad and walked out
and now she’s turning around and suing. 
We’ve been tormented by this case for two years.  For two years she’s used these attorneys like
a baseball bat.  She’s built a baseball
bat made up out of attorney’s fees.  $90,000.  And she’s
been hitting us over the head with that baseball bat for two years.  We’ve been living under a cloud of fear,
under concern, worry what’s going to happen with our business and our lives
because of some fabrication of this lady. 
But we stole her money.  That’s
what she would have you believe.  I’d ask
you to put an entry of zero [for Gen’s Antiques’ damages].  When she got the first check for [$]2,187, she knew the other checks were in the other
envelopes, but she didn’t pick them up. 
She’d rather go around saying we’re thieves than take the money we
offered her.  Just like with the
festival, she didn’t take the money, she’d rather complain we owed her the
money.  That’s her M-O and that’s what
she’s done here.

 

We cannot conclude that these statements by Gillespie are
the types of incurable arguments that “strike[] at the
very core of the judicial process,” as they do not constitute “unsupported,
extreme, and personal attacks” on parties or witnesses or arguments not based
on evidence.  See Phillips, 288 S.W.3d at 883; see also Zurita, 322 S.W.3d at 482–83
(holding that counsel is entitled to
argue facts of case, including reasonableness of the evidence and any
inferences made from evidence).  Rather, Gillespie’s
arguments contain his characterization of the evidence presented at trial in
support of Hart & Co.’s theory of the case. 
In light of the evidence presented at trial and the trial court’s
repeated admonishments that the jury was to consider only the evidence admitted
during trial in the form of testimony or documents and that the arguments of
the attorneys did not constitute evidence, we cannot conclude that this
argument is one of the rare instances of such error that an instruction from
the court or retraction of the argument could not have removed its effects.  See Penalver, 256 S.W.3d at 680–81.

          We
conclude that the trial court did not abuse its discretion in denying Gen’s
Antique’s motion for new trial on this ground. 
See In re R.R., 209 S.W.3d at 114.

          We
overrule Gen’s Antiques’ eighth point of error.

                                                                                                                                                                   
Conclusion

We affirm the portion of the trial court’s judgment
rendering judgment that Gen’s Antiques take nothing, and we reverse the portion
of the trial court’s judgment that Hart & Co. take nothing and remand for rendition
of judgment on the jury’s verdict.

 

 

                                                                   Evelyn
V. Keyes

                                                                   Justice


 

Panel
consists of Justices Keyes, Bland, and Sharp.











[1]           Nolte testified that McKenzie and her
cousin owned the property at 805 Sandman, the address where they received the
December 12, 2007 letter and one check, and that he lived at a different
property located on Sandman.  He further
testified that no one lived at 805 Sandman in January 2008 or throughout that
year.  McKenzie testified that she lived
at 805 Sandman at the time of trial, but she did not live there from spring of
2006 through spring of 2008.





[2]           These individuals did not testify at
the trial.





[3]           The record does not contain written
proposed jury questions on these issues or other detailed explanation of the
language Gen’s Antiques sought to have submitted in these charges.





[4]           Hart & Co.’s motion to disregard
the jury’s answer to the question of its damages for breach of contract does
not appear in the record.  The
information regarding its motion is taken from Gen’s Antiques’ response to the
motion.





[5]           See
Lazell v. Stone, 123 S.W.3d 6, 11–12 (Tex.
App.—Houston [1st Dist.] 2003, pet. denied) (providing elements of constructive
eviction claim); Quitta v. Fossati,
808 S.W.2d 636, 643 (Tex. App.—Corpus Christi 1991, writ denied) (“[O]ur courts have repeatedly held that a mere notice to quit,
followed by vacation of the premises by the tenant, does not constitute a
constructive eviction, for there must be some additional feature, such as
harassing incidents disturbing to the tenant’s peaceful possession and
occurring on the property; and, that if the tenant moves out without protest,
there is no eviction.”) (citing Michaux v. Koebig, 555 S.W.2d 171, 177 (Tex.
Civ. App.—Austin 1977, no writ) and Rust
v. Eastex Oil Co., 511 S.W.2d 358, 361 (Tex. Civ.
App.—Texarkana 1974, no writ)); Fabrique, Inc. v. Corman, 796 S.W.2d 790, 792 (Tex. App.—Dallas 1990, no
writ) (holding same).  





[6]           In its second point of error, Gen’s
Antiques also argues that the trial court erred in denying its motion for JNOV
on its claims for breach of written and oral contract with respect to Hart’s
failure to pay economic damages.  We
review the grant or denial of a motion for JNOV under a legal-sufficiency
standard.  See Tanner v. Nationwide Mut. Fire Ins. Co.,
289 S.W.3d 828, 830 (Tex. 2009) (citing City
of Keller v. Wilson, 168 S.W.3d 802, 823 (Tex. 2005)).  Because we have already concluded that the
evidence was legally sufficient that Hart & Co. did not breach its written
or oral agreements with Gen’s Antiques, we likewise conclude that the trial
court did not err in denying the motion for JNOV based on these claims.  We overrule Gen’s Antiques’ second point of
error.





[7]           Because of our holdings on these
points, we do not address Hart & Co.’s fifth counter-point, arguing that
the trial court abused its discretion in exercising its plenary power to modify
a judgment based on an issue not presented in Gen’s Antiques’ motion for new
trial.





[8]           Gen’s Antiques makes this argument in
passing in its reply brief, stating, “[E]ven if Hart
& Co. had properly pled, there is no evidence to support a jury finding of
breach of contract or an award of attorney’s fees to Hart & Co.”  Gen’s Antiques does not assert any specific
arguments regarding the reasonableness of the fees or cite any authority on
this issue.  We also note that Gen’s
Antiques does not assert on appeal its argument from its motion for new trial
that Hart & Co. failed to present its claim for breach of lease prior to
the filing of suit as required by Texas Civil Practices and Remedies Code
section 38.002(2).





[9]           Gen’s Antiques argues in its reply
brief that its acceptance of the “past-due” sales proceeds does not estop it from appealing the issue of its right to
attorney’s fees.  However, Gen’s Antiques
is precluded from receiving an award of attorney’s fees due to its failure to
prevail on any claim for which attorney’s fees are recoverable.