**COLUMBIA/HCA OF HOUSTON, INC., et al., Appellant,**

v.

**TEA CAKE FRENCH BAKERY AND TEA ROOM, Appellee.**

**No. 14–98–00417–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

Sept. 9, 1999.

Rehearing Overruled Dec. 16, 1999.

Joe Michels, Houston, for appellants.

Bernard Lilse Mathews, III, Houston, for appellees.

Panel consists of Justices YATES, MAURICE E. AMIDEI, and FOWLER.

## OPINION

WANDA McKEE FOWLER, Justice.

This case presents a statute of frauds issue regarding the termination or modification of a lease. Appellant, Columbia/HCA of Houston, Inc., the landlord, appeals from a judgment in favor of Tea Cake French Bakery and Tea Room, the tenant. We (1) reverse and render the jury verdict in favor of Tea Cake because no written agreement existed between HCA and Tea Cake to modify or terminate the lease, and render that Tea Cake take nothing on this claim, and (2) reverse and remand Tea Cake's cause of action for constructive eviction because the trial court improperly granted a motion for directed verdict on this claim.

## BACKGROUND

Tea Cake was a bakery owned and operated by Hung Van Vu and Yen T.H. Trinh in the Red Oak Shopping Center since 1981. The bakery's lease was to expire on November 30, 1996. However, in July of 1995, the shopping center where Tea Cake was located was purchased by HCA. HCA planned to build a hospital on the site in early 1997. To meet that deadline, HCA was going to have to relocate the tenants and demolish the center. HCA posted a large sign in front of the shopping center announcing the opening of the new hospital in early 1997. Ed Myers, Columbia's CEO, was in charge of the project and was responsible for negotiating with

the shopping center tenants for early termination of their leases. In August of 1995, Myers met with all the tenants of the center to inform them that HCA was interested in buying out the remaining terms of their leases and that he would meet with them individually to gather information to negotiate each tenant's buyout plan.

In early September of 1995, Myers met with Vu at the bakery. During this meeting, Vu told Myers that he would relinquish his lease if HCA would pay the bakery's relocation costs. At this meeting, Myers toured the bakery and made some handwritten notes which outlined the general categories of cost bids Vu would obtain such as build-out of the new bakery, moving expenses, and advertising expenses. Myers asked Vu to gather all the necessary bids and estimates and submit them to HCA. After three weeks of gathering bids and estimates, Tea Cake submitted a written estimate to HCA on September 25, 1995. In this estimate, Tea Cake requested $287,000 for moving expenses, build-out costs, and other expenses. HCA rejected the estimate, feeling that it was excessive; it was approximately ten times the amount Tea Cake owed on the remaining 14 months of its lease.

Over the next few months, Tea Cake submitted other estimates, but they also were rejected because they were higher than what HCA was paying other tenants. Most other tenants left the shopping center by December, but Tea Cake did not move.

In October of 1995, HCA's architects determined that the shopping center would not need to be demolished until after November of 1996, which also happened to be the end of Tea Cake's lease. HCA informed Tea Cake that it could remain in the shopping center until its lease expired. However, because the shopping center was virtually empty, Tea Cake still wanted to change locations. The parties attempted to work out an agreement, but none was reached.

Finally, on July 9, 1996, after it was evident that HCA would not pay what Tea Cake wanted, Tea Cake sued HCA for breach of contract, fraud, promissory estoppel, and constructive eviction. The trial court granted a summary judgment in HCA's favor on this issue of fraud. Tea Cake voluntarily dismissed its promissory estoppel cause of action before the case was submitted to the jury. The trial court granted HCA's motion for directed verdict on the issue of constructive eviction. Only the breach of contract claim went to the jury. On that issue, the jury returned a verdict in Tea Cake's favor and awarded it $108,000 in damages and $25,000 in attorney's fees. HCA appeals this judgment on three points of error, and Tea Cake appeals the trial court's directed verdict on the issue of constructive eviction on one point of error.

## DISCUSSION AND HOLDINGS

■ HCA's first point of error raises a statute of frauds defense concerning what Tea Cake alleged was a contract for the surrender or termination of Tea Cake's lease. The trial court apparently found that a fact issue existed as to whether a contract existed and submitted the issue to the jury, which found in favor of a contract. HCA attempted to have this finding set aside and contends the trial court erred in entering judgment and denying its motions for judgment n.o.v. and new trial because the alleged contract for the surrender or termination of Tea Cake's lease fails to satisfy the statute of frauds.

This point of error, and, the outcome of the trial, is contingent on the existence of a binding agreement. When Myers met with the tenants in August of 1995, he made it clear that, in exchange for the termination of their leases, HCA would pay reasonable relocation costs. What HCA wanted was an agreement from each of the tenants to terminate or modify their leases. In this point of error, HCA makes two points. First, it asserts that the modi-

fication or early termination of the lease would have to be in writing to be binding under the statute of frauds. Second, it claims that this record contains no document satisfying the statute of frauds. We agree on both points. We address first the issue of whether any agreement would have to be in writing.

■ The statute of frauds requires that a promise or an agreement about the lease of real estate must be in writing. *See* TEX. BUS. & COM.CODE ANN. § 26.01 (Vernon 1987). The same written requirement is true for any terminations, modifications, cancellations, transfers, or assumptions of a lease. *See Givens v. Dougherty*, 671 S.W.2d 877, 878 (Tex.1984) (stating that a recission of a written contract falls within the statute of frauds); *Ertel v. O'Brien*, 852 S.W.2d 17, 22 (Tex.App.—Waco 1993, writ denied) (stating that a promise or an agreement to assume the debt of another is not enforceable unless the promise is in writing); *Kerrville HRH, Inc. v. City of Kerrville*, 803 S.W.2d 377, 389 (Tex.App.—San Antonio 1990, writ denied) (stating that a modification of a lease required to be writing must also be in writing); *Vela v. Pennzoil Producing Co.*, 723 S.W.2d 199, 206 (Tex.App.—San Antonio 1986, writ ref'd n.r.e.) (stating the statute of frauds applies to any transfer of an interest in land). Based on the statute and the case law, we conclude that, for HCA to be obligated to pay Tea Cake's relocation expenses in exchange for Tea Cake's early surrender of its lease, a written agreement would have to exist.

This record contains few documents which contain any sort of discourse between Tea Cake and HCA. As noted earlier, Tea Cake first relies on a piece of paper containing hand written notations made by Myers during his meeting with Vu. However, this piece of paper is woefully lacking in details: it contains only (1) three phrases with blank lines after them (excess buildout expenses, advertising campaign expenses, and moving expenses) and (2) three other illegible notations.

The paper shows Myers and HCA's intent to compensate Tea Cake for leaving its lease early. However, it does not show that a specific agreement was reached. In fact, we know that an agreement was not reached because each side testified that Vu was to gather bids on what amounts should be put into the blanks Myers left. Vu gathered bids. The results of his investigation are reflected in his letter to HCA on September 25, 1995, in which he requests $287,000 for moving expenses, build-out costs, and other expenses. Vu would like us to rely on this document, in conjunction with Myers' handwritten note, to provide the necessary details to satisfy the statute of frauds. However, the record will not allow us to do that. The record conclusively shows that this letter was nothing more than the initial starting point for the negotiations between HCA and Tea Cake. As such, it could not constitute a binding written agreement. *See Knowlton v. United States Brass Corp.*, 864 S.W.2d 585, 596 (Tex.App.—Houston [1 st Dist.] 1993), *modified*, 919 S.W.2d 644 (Tex.1996); *Baldwin v. New*, 736 S.W.2d 148, 152 (Tex.App.—Dallas 1987, writ denied).

In short, there is no written agreement between HCA and Tea Cake regarding the termination or modification of the lease. Without evidence of a written agreement between HCA and Tea Cake, the statute of frauds was not satisfied, and there was no breach of contract claim to submit to the jury. Consequently, we sustain HCA's first point of error. Our resolution of this point of error in favor of HCA renders HCA's two remaining points of error moot.

■ However, we still must address a point of error raised by Tea Cake. On one point of error, Tea Cake contends the trial court erred by granting a directed verdict on the constructive eviction issue. In reviewing a case in which a verdict has been directed, we must view the evidence in the light most favorable to the party against whom the verdict was rendered, and we disregard all contrary evidence and infer-

ences. *See Qantel Business Sys., Inc. v. Custom Controls Co.*, 761 S.W.2d 302, 303 (Tex.1988). If we find any evidence of probative value which raises a material fact issue, then the judgment must be reversed and remanded for a jury determination on that issue. *See id.* at 304. Here, we find some evidence of probative value raising a material fact issue.

■ In order to prove its claim of constructive eviction, Tea Cake must establish four essential elements. These four elements are as follows:

(1) An intention on the part of the landlord that the tenant shall no longer enjoy the premises, which intention may be inferred from the circumstances; (2) A material act by the landlord or those acting for him or with his permission that substantially interferes with the use and enjoyment of the premises for the purpose for which they are let; (3) The act must permanently deprive the tenant of the use and enjoyment of the premises; (4) The tenant must abandon the premises within a reasonable time after the commission of the act.

*Downtown Realty, Inc. v. 509 Tremont Bldg., Inc.*, 748 S.W.2d 309, 311 (Tex. App.—Houston [14 th Dist.] 1988, no writ); *see Metroplex Glass Center v. Vantage Properties, Inc.*, 646 S.W.2d 263, 265 (Tex. App.—Dallas 1983, writ ref'd n.r.e).

After reviewing the evidence in the light most favorable to Tea Cake, we conclude that a fact issue exists on the constructive eviction cause of action. We agree with Tea cake that it presented some evidence on each of the four elements. First, the landlord wanted the tenants out and was paying them to leave the premises. Second, by the end of October of 1995, the center was either vacant or almost vacant, except for Tea Cake. Before this, a significant portion of Tea Cake's business was walk-in. After this, that part of the business stopped. Vu testified that the loss of the business greatly impacted around Christmas. Vu also introduced financial figures to show the lost profits attributable to the lack of other business in the center. In deciding if Tea Cake introduced some evidence on each of the four elements, the closest issues are whether Tea Cake abandoned the premises, and, then, whether it did so within a reasonable time after "the commission of the act". Tea Cake left before the lease was completed—even though it was only weeks before the lease was up—so we cannot say as a matter of law that Tea Cake did not abandon the lease. Moreover, we cannot say as a matter of law that Tea Cake did not abandon the premises within a reasonable time period because Tea Cake presented some evidence that it was unable to leave before it did.

Finding that a fact issue exists as to constructive eviction, we reverse the trial court's ruling granting the directed verdict and reverse and remand the case to the trial court for a trial on the constructive eviction cause of action.

In sum, we (1) reverse the jury's verdict for Tea Cake on the breach of contract cause of action and render judgment that Tea Cake take nothing against HCA on this claim, and (2) reverse the trial court's oral granting of the motion for directed verdict on Tea Cake's constructive eviction cause of action and remand that claim to the trial court for a trial on the merits.