Carol E. LAZELL, D.D.S., Appellant,

v.

**Elizabeth STONE d/b/a The Stone Kitchen, Appellee.**

No. 01–02–00029–CV.

Court of Appeals of Texas, Houston (1st Dist.).

June 5, 2003.

Rehearing Overruled Aug. 26, 2003.

---

1. During Stergiou's testimony, the reference to Defense Exhibit 37 occurred outside the presence of the jury.

Keith T. Gilbert, Gilbert & Maxwell, Houston, for Appellant.

Peter C. Smart, Houston, for Appellee.

Panel consists of Justices TAFT, KEYES, and HIGLEY.

## OPINION ON REHEARING

LAURA C. HIGLEY, Justice.

We deny appellant's motion for rehearing. We withdraw our March 13, 2003 opinion, substitute this opinion in its place, and vacate our March 13, 2003 judgment.

Appellant, Carol D. Lazell, D.D.S. ("Lazell") sued appellee, Elizabeth Stone d/b/a The Stone Kitchen ("Stone") for breach of a commercial lease of real property. Stone counterclaimed for wrongful and constructive eviction, breach of lease, breach of express warranty and breach of the implied warranty of suitability. Following a bench trial on September 10, 2001, the court entered judgment and awarded damages in favor of Stone.

We address (1) whether the trial court erred in awarding damages to appellee, and (2) whether the damage award was improper because appellee failed to pay rent.

We affirm.

### Background

On October 1, 1997, Stone entered into a commercial lease agreement (the "Lease") with The Sunset Syndicate ("Sunset"). The Lease constituted approximately 1700 square feet of space, known as 2419 Sunset, in Houston, Texas, to be used for professional offices (the "Premises"). The initial lease term was for the period of October 1, 1997 through September 30, 1998. The Lease was subsequently amended, extending the term through September 30, 1999. Stone is in the food catering business and used the Premises for offices, storage of files, and storage of various catering supplies and equipment ("equipment"). Sunset sold the property to Lazell, Lazell's brother, and Lazell's husband on June 4, 1999. Lazell acted as the property manager for the Premises.

The Lease was apparently assigned to the new owners as part of the transaction.

Before finalizing the sale of the property to Lazell, Sunset had construction workers perform an asbestos abatement on the property on June 1 and 2 of 1999. When Stone attempted to enter the Premises on June 1, she and her employees were denied access because of the abatement. Stone stated that she had not been informed that the abatement would be taking place, and that if she had, she would have removed her equipment in order to protect it from potential exposure. Sunset testified that they had sent Stone a letter informing her of the work to be done. On approximately June 4, 1999, Stone contacted Sunset and requested documentation as to whether the asbestos abatement had been done properly because she did not want to enter the Premises if it were unsafe or if the equipment had been exposed to asbestos. It was at that time that Sunset informed Stone that the Premises had been sold to Lazell.

Within the next few days, Stone tried to contact Lazell and went to the Premises to talk to Lazell. The locks on the Premises had been changed, so Stone knocked on the door. Lazell's brother answered the door, informed Stone that the locks had been changed, and that Stone and her employees were no longer permitted to come on the Premises. Therefore, Stone did not go back on the Premises except to remove some equipment located in and next to the garage. Stone was never provided with any documentation, from either Sunset or Lazell, verifying whether the abatement had been done properly. Because Stone did not know whether the equipment was safe to use after the abatement, she did not attempt to remove any of it from the Premises.

## Sufficiency of the Evidence

In two points of error, appellant appears to contend that the evidence is legally and factually insufficient to sustain the trial court's award of damages to appellee and its denial of appellant's claims. Because appellant's issues are so closely related, we address them together.

### Standard of Review

When the trial court acts as a fact finder, we review its findings under the legal and factual sufficiency standards. *In re Doe*, 19 S.W.3d 249, 253 (Tex.2000). When this Court reviews legal sufficiency, we review the evidence in a light that tends to support the finding of the disputed facts and disregard all evidence and inferences to the contrary. *Lee Lewis Const., Inc. v. Harrison*, 70 S.W.3d 778, 782 (Tex.2001). If more than a scintilla of evidence exists, it is legally sufficient. *Id.* More than a scintilla of evidence exists if the evidence furnishes some reasonable basis for differing conclusions by reasonable minds about a vital fact's existence. *Id.* at 782–83. In reviewing a factual sufficiency issue, we conduct a neutral review of all the evidence. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986). We reverse the ruling for factual insufficiency of the evidence only if the ruling is so against the great weight and preponderance of the evidence as to be manifestly erroneous or unjust. *Minucci v. Sogevalor, S.A.*, 14 S.W.3d 790, 794 (Tex.App.-Houston [1st Dist.] 2000, no pet.).

### Analysis

Appellant asserts that she is not liable for any damages sustained by appellee due to the asbestos abatement procedure because the breach occurred before the property was transferred to her and the other owners. Appellant also contends that there was no evidence of asbestos damage to appellee's Equipment and that, if there

were a breach, Sunset was the liable party. Further, appellant asserts that appellee defaulted on the Lease by not paying rent, and thus cannot complain based on constructive eviction grounds.

The following is a partial list of the findings of facts and conclusions of law made by the trial court:

**Findings of Fact:**

1. Title to the Premises was transferred to Carol E. Lazell ("Dr.Lazell"), Douglas J. Lazell and Dennis R. Mosier on June 4, 1999 (Dr. Lazell, Douglas J. Lazell and Dennis R. Mosier are referred to collectively as the "New Owners"). As a result of the transfer of title, the New Owners were assigned the Lease and became the Landlord under the Lease. Ms. Stone's $1,500 security deposit was transferred to Dr. Lazell via check dated June 10, 1999.

2. Within a few days of June 4, 1999, Ms. Stone attempted to gain access to the Premises. Ms. Stone wanted to speak with the New Owners to find out if they had any verification that her Equipment/Inventory had not been exposed to asbestos dust or other contamination. Ms. Stone could not gain access to the Premises because the lock to the front door had been changed. One of the New Owners came to the door and told Ms. Stone that she was no longer welcome in the Premises. The New Owners did not provide Ms. Stone with any verification that her Equipment/Inventory had not been exposed to asbestos dust or other contamination.

3. The foregoing facts comprise a breach of the Lease by the Landlord.

4. The foregoing facts comprise a breach of an express warranty in the Lease by the Landlord.

5. The foregoing facts comprise a breach of the implied warranty that the Premises was suitable for its intended purpose by the Landlord.

6. The foregoing facts comprise an unjustified eviction by the Landlord.

7. The foregoing facts demonstrate that Ms. Stone was constructively evicted from the Premises. The foregoing facts demonstrate that; [sic] (1) the Landlord intended that Ms. Stone no longer enjoy the Premises; (2) the Landlord substantially interfered with Ms. Stone's use and enjoyment of the Premises; (3) Ms. Stone was permanently deprived of the use and enjoyment of the Premises; and (4) Ms. Stone abandoned the Premises after such events, and as a direct result of such events.

8. As a result of the foregoing facts, Ms. Stone was justified in abandoning the Premises and discontinuing rent payments for June, July, August and September of 1999.

**Conclusions of Law:**

1. Ms. Stone did not breach the Lease.

2. The Landlord breached the Lease.

3. The Landlord breached an express warranty under the Lease.

4. Sunset Syndicate assigned all rights and responsibilities under the Lease to the New Owners. As assignee, the new Owners became responsible for all of the Landlord's obligations under the Lease.

5. The Landlord's actions support a finding that the Landlord breached the implied warranty that the Premises was suitable for an intended purpose. As such, Ms. Stone was justified in not making any rent pay-

ments for June, July, August or September of 1999.

6. The Landlord's actions support a finding of constructive eviction.

■■■■ Appellant asserts that she is immune from all liability for a contractual breach that occurred before the property was transferred to her. Here, the breach was a breach of an express warranty in the Lease, that the Premises had no asbestos. The Lease provides as follows:

Landlord warrants and represents that this Property does not contain "Hazardous Materials", as that phrase is defined herein. For purposes of this provision, the phrase "Hazardous Materials" shall mean and include ... asbestos.

Appellant correctly refers to the controlling principle: "The transferee [of an interest in leased property] will not be liable for any breach of the promise which occurred before the transfer to him." *Regency Advantage Ltd. P'ship v. Bingo Idea–Watauga, Inc.*, 936 S.W.2d 275, 277 (Tex.1996) (citing RESTATEMENT (SECOND) OF PROPERTY § 16.1(3) (1977)). The court found that appellant and the other owners took title to the Premises on June 4, 1999 and that the asbestos abatement began on June 1, 1999.

However, in situations in which the original lessor has breached a lease prior to transferring the lease to its assignee, the other party to the lease may be entitled to terminate the lease for the past breaches and, if so, the transferee's position under the transfer may be affected accordingly. *Regency*, 936 S.W.2d at 277–78 (citing RESTATEMENT (SECOND) OF PROPERTY § 16.1 cmt. h (1977)). In *Regency*, although the assignee was not liable to the tenant for a breach of the lease that occurred before the lease was assigned to the assignee, the court held that the tenant may have a right to terminate or a defense against payment of rent to the assignee. *Id.* at

278. Therefore, as in *Regency*, although appellant was not initially liable for the breach of the Lease, appellee was entitled to terminate the Lease or withhold payment of rent.

■■■ Appellant also contends that there was no evidence of asbestos damage to appellee's Equipment, and thus, appellee has no factual basis for damages. Appellee requested verification from both Sunset and appellant that the abatement had been performed properly and her Equipment was safe to use. Appellee received no such verification from either party. Appellant has offered nothing in the record to demonstrate that there was, in fact, no asbestos contamination at the Premises. Logically, the facts point to quite the opposite. Appellant admits that an abatement for asbestos took place on the Premises beginning on June 1, 1999. Abatement is the act of abating, which means to put an end to or to reduce in degree or intensity. MERRIAM WEBSTER'S COLLEGIATE DICTIONARY 1, 2 (10th ed.1993). Therefore, if there was no asbestos on the Premises to begin with, there would have been no need for asbestos abatement. Moreover, the trial court made findings of fact that the Landlord breached the implied warranty that the Premises was suitable for its intended purpose. We find that the record supports factual sufficiency of the trial court's findings.

■■■■ Appellant also contends that appellee defaulted on the Lease by not paying rent for the months of June, July, August, and September, and, therefore, cannot complain based on constructive eviction grounds. The essential elements of constructive eviction are (1) an intention on the part of the landlord that the tenant shall no longer enjoy the premises, (2) a material act by the landlord that substantially interferes with the tenant's intended

use and enjoyment of the premises, (3) an act that permanently deprives the tenant of the use and enjoyment of the premises, and (4) abandonment of the premises by the tenant within a reasonable time after the commission of the act. *Holmes v. P.K. Tubing, Inc.* 856 S.W.2d 530, 539 (Tex. App.-Houston [1st Dist.] 1993, no writ); *Columbia/HCA of Houston, Inc. v. Tea Cake French Bakery and Tea Room,* 8 S.W.3d 18, 22 (Tex.App.-Houston [14th Dist.] 1999, pet. denied). The landlord's intent may be inferred from the circumstances. *Holmes,* 856 S.W.2d at 539; *Columbia/HCA,* 8 S.W.3d at 22.

■ Here, the trial court found that the facts demonstrated that appellee was constructively evicted from the Premises. We agree. Appellant's intention that appellee no longer enjoy the Premises can be inferred from the combination of appellant's changing the locks on the Premises and informing appellee that she was no longer welcome on the Premises. This took place in early June when the June rent was only a few days late. Appellant did not give appellee notice of default until June 27, 1999, well after appellant had changed the locks and informed appellee that she was no longer welcome on the Premises. These actions also constitute a material act by appellant substantially and permanently interfering with appellee's intended use and enjoyment of the Premises. Because of these actions, appellee did not make any further attempt to retrieve her Equipment from the Premises or to return to the Premises, thus effectively abandoning the Premises in early June. We find that there was more than a scintilla of evidence to support a constructive eviction claim; therefore, the evidence was legally sufficient to support the trial court's find-

ing. We also find that the trial court's ruling is not so against the great weight and preponderance of the evidence as to be manifestly erroneous or unjust, and is, therefore, factually sufficient.

■ Generally in cases where a breach of the warranty of quiet enjoyment[1] is claimed, a landlord seeks to collect rent payments still remaining under the lease when his tenant has already abandoned the property. *Goldman v. Alkek,* 850 S.W.2d 568, 572 (Tex.App.-Corpus Christi 1993, no writ). By way of defense, the tenant will claim that he is not obligated to pay the remaining installments because the landlord has breached the warranty of quiet enjoyment or has constructively evicted him. *Id.* If he proves his claim, the lease is effectively rescinded, and the tenant will be excused from any further obligation to pay rent. *Id.* A commercial landlord impliedly represents that the premises are suitable for their intended commercial use and will remain in a suitable condition. The tenant's obligation to pay rent and the landlord's implied warranty of suitability are mutually dependent. *Davidow v. Inwood N. Prof'l Group—Phase I,* 747 S.W.2d 373, 377 (Tex.1988).

■ As well as relieving a tenant of the obligation to pay rent, a constructive eviction entitles a tenant to recover any loss which is a foreseeable consequence of the eviction. *Charalambous v. Jean Lafitte Corp.,* 652 S.W.2d 521, 526 (Tex.App.-El Paso 1983, writ ref'd n.r.e.). A loss of appellee's Equipment after appellant refused both to furnish appellee with evidence of successful asbestos abatement and to allow her to enter the Premises is a foreseeable consequence of the eviction.

---

1. The elements of a breach of the warranty of quiet enjoyment are the same as the elements in a constructive eviction claim. *See Gold-* *man v. Alkek,* 850 S.W.2d 568, 571–72 (Tex. App.-Corpus Christi, 1993 no writ).

Thus, appellee is entitled to recovery for that loss.

Although the original breach occurred before title was transferred to appellant, appellee had the right to terminate or a defense against payment of rent to appellant. *See Regency*, 936 S.W.2d at 277–78. Further, appellee was excused from paying rent when she was constructively evicted from the Premises. Finally, appellee was entitled to a recovery for any loss resulting from the eviction. We hold that the evidence was legally and factually sufficient to support the trial court's findings, and overrule appellant's points of error.

### Conclusion

We affirm the judgment of the trial court.