**Affirmed and Opinion filed December 14, 2023.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-22-00169-CV

---

## SYLVIA ARREDONDO, Appellant

### V.

## VILLAGE ON THE LAKE, LTD AND VOTL I GP, INC., Appellees

---

**On Appeal from the 151st District Court**
**Harris County, Texas**
**Trial Court Cause No. 2020-40619**

---

## OPINION

Appellant Sylvia Arredondo ("Arredondo") filed a lawsuit against appellees Village on the Lake, LTD ("the Village") and VOTL I GP ("VOTL") for familial status discrimination, breach of contract, constructive eviction, and breach of warranty of quiet enjoyment. The Village filed a counterclaim for breach of lease. The Village and VOTL filed a traditional and no-evidence motion for summary judgment on Arredondo's claims and on the Village's counterclaim, which the trial court granted. Arredondo appeals. We affirm.

# I. BACKGROUND

Arredondo signed a one-year lease beginning March 26, 2020, for a three-bedroom apartment. Arredondo moved in with her eight-year-old daughter and fourteen-year-old son, and Arredondo's four-year-old twin boys came for Easter.[1]

March 2020 was the unexpected start of the COVID-19 pandemic, resulting in shutdowns and school closures. As a result, adults and children were suddenly home fulltime. Arredondo's downstairs neighbor had lived at the Village for five months and had already complained about the previous tenants in Arredondo's apartment. This downstairs neighbor had documented her problems with the prior tenants and had also previously complained to a parent about their children's "rambunctious" behavior outside her ground floor apartment.

On Easter weekend, the downstairs neighbor started complaining about Arredondo and her children. Specifically, she was upset at the children's noise and activity and contended that Arredondo and another parent did not properly control their children. The neighbor wrote to the Village, stating that the grassy common area had "become the playground for about 8 kids from sunup to sundown," and that Arredondo and her daughter disturbed her by tossing a football from the common area to their balcony. The neighbor asked Arredondo if she could "stop allowing the kids to run around and make so much noise." Arredondo apologized and explained that her little boys were active.

On Easter Sunday, the neighbor was so disturbed by the children's playing that she left her apartment to calm herself. At 9:30 p.m. that night, the neighbor sent an email to the Village's manager, complaining that "the new tenants above me and beside me are absolutely inconsiderate and have created an intolerable

---

[1] Arredondo had been widowed with her two eldest children and shared custody of the twins with their father.

living environment." She also requested a mutual termination of her lease.

On Monday, one of the Village's employees stopped by Arredondo's apartment to discuss the noise complaint. On Tuesday, just nineteen days into her lease, the Village followed up with a written notice of lease violation. The Village ticked boxes on the notice for "disturbance," "disturbing others," "excessive noise," "loud or obnoxious behavior," and "trash by your entry," attaching a photograph of snack wrappers on the ground. Arredondo was incredulous, noting that there was a shutdown for the pandemic and she was being asked to keep her children quiet both indoors and outdoors. Later that day, a police officer also came to Arredondo's apartment to discuss the noise complaint.

One week later, the Village delivered a second written notice of lease violation, ticking the same boxes. The notice specified that the apartment management had responded to another noise complaint and had observed Arredondo's apartment for ten minutes. Per the notice, the manager witnessed constant running, screaming, loud banging, running in and out of the apartment, slamming doors, and "obnoxious" behavior in the common area. The Village warned Arredondo that it was a violation of the lease to disrupt other residents. The notice also stated that "[i]f disturbances do not stop then possible eviction" and if Arredondo failed to reach a satisfactory resolution with management, "additional action will follow." Arredondo explained to an employee of the Village that the kids had been playing while on a break from at-home school and were laughing, but not yelling.

That night, one of the twins woke crying from a nightmare. The downstairs neighbor called police, who knocked on Arredondo's door at 2:00 a.m.

To Arredondo, it became "clockwork" that almost every other day she was receiving a call or a visit from a Village employee. When an employee came to her

door, the on-site police officer would also come. On May 4, 2020, the Village suggested relocating Arredondo to a first-floor apartment if one became available. After this, the Village manager again approached Arredondo with a police officer—this time while she was in her car at the apartment exit. Finally, on May 14, a police officer again came to Arredondo's door. Feeling hopeless after two written lease violations, at least three police visits, and multiple telephone calls and visits from the Village management, Arredondo started looking for a home to rent.

Just two months after moving in, Arredondo moved out of the apartment—but did not give notice—on May 30, 2020. She paid rent through June 2020, and the Village issued Arredondo a final account statement for $14,031.25 for rent and fees under the lease terms. Arredondo sued the Village and its general partner, VOTL, on July 8, 2020. The Village countersued for the unpaid rent and fees, and appellees filed a traditional and no-evidence motion for summary judgment after the close of the discovery period. The trial court granted appellees' motion in December 2021. This appeal followed.

## II. STANDARD OF REVIEW

"When a party moves for both traditional and no-evidence summary judgments, we first consider the no-evidence motion." *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 219 (Tex. 2017) (citing *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004)). "To defeat a no-evidence motion, the non-movant must produce evidence raising a genuine issue of material fact as to the challenged elements." *Parker*, 514 S.W.3d at 220 (citing *Ridgway*, 135 S.W.3d at 600). "If the non-movant fails to meet its burden under the no-evidence motion, there is no need to address the challenge to the traditional motion, as it necessarily fails." *Id.* (citing *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013)). "Thus, we first review each claim under the no-

4

evidence standard." *Id*. Any claims that survive the no-evidence review will then be reviewed under the traditional standard. *Id*. at 219–20.

In a no-evidence motion for summary judgment, the movant asserts that there is no evidence of one or more essential elements of the claim or defense for which the nonmovant bears the burden of proof at trial. Tex. R. Civ. P. 166a(i); *see Timpte Indus. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009). The burden then shifts to the nonmovant to present evidence raising a genuine issue of material fact as to the elements specified in the motion. *See Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). We will affirm a no-evidence summary judgment when (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact. *See City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005).

A party moving for traditional summary judgment meets its burden by proving that there is no genuine issue of material fact and it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c). "A genuine issue of material fact exists if the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Parker*, 514 S.W.3d at 220 (internal quotations omitted). The evidence does not create an issue of material fact if it is "so weak as to do no more than create a mere surmise or suspicion" that the fact exists. *Kia Motors Corp. v. Ruiz*, 432 S.W.3d 865, 875 (Tex. 2014) (quoting *Ridgway*, 135 S.W.3d at 601).

### III.   ARREDONDO'S CLAIMS

Arredondo sued appellees for familial status discrimination under the Texas Fair Housing Act, Tex. Prop. Code Ann. § 301.021, and the Federal Fair Housing

5

Act., 42 U.S.C. § 3604. She also brought claims for breach of contract, constructive eviction, and breach of warranty of quiet enjoyment. The Village and VOTL filed a no-evidence motion for summary judgment on these claims.

## A. WAIVER

As a preliminary matter, appellees argue that Arredondo has waived any challenge to the judgment by failing to offer substantive analysis, proper record citations, and applicable authority in her appellate briefing. *See* Tex. R. App. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record."); *WorldPeace v. Comm'n for Law. Discipline*, 183 S.W.3d 451, 460 (Tex. App.—Houston [14th Dist.] 2005, pet. denied) (concluding that appellate arguments were waived due to the absence of "argument or citations to the record or to authority"). Recognizing this court's obligation to construe the rules of appellate procedure "reasonably, yet liberally," we address Arredondo's arguments to the extent possible; that is, when her arguments are supported by appropriate citations to authorities and to the record. *See* Tex. R. App. P. 38.1(i); *Republic Underwriters Ins. v. Mex–Tex, Inc.*, 150 S.W.3d 423, 427 (Tex. 2004) (quoting *Verburgt v. Dorner*, 959 S.W.2d 615, 616 (Tex. 1997)).

## B. FAMILIAL STATUS DISCRIMINATION

Both the Federal Fair Housing Act ("FHA") and Texas Fair Housing Act ("TFHA")[2] prohibit discrimination in the rental or sale of a dwelling, or in the provision of connected services or facilities, based on certain protected

---

[2] The TFHA "provide[s] rights and remedies substantially equivalent to those granted under federal law." Tex. Prop. Code Ann. § 301.002; *see Richardson v. SV Almeda I Ltd. P'ship*, No. 01-11-01004-CV. 2013 WL 4680392, at *6 (Tex. App.—Houston [1st Dist.] Aug. 29, 2013, no pet.) (mem. op.). Accordingly, because the few Texas cases addressing the TFHA do not differ from FHA precedent, we utilize federal precedent in our analysis.

characteristics, including familial status. *See* 42 U.S.C. § 3604; Tex. Prop. Code Ann. §§ 301.001–.171; *Gladstone Realtors v. Vill. Of Bellwood*, 441 U.S. 91, 93 (1979); *see also Texas v. Crest Asset Mgmt., Inc.*, 85 F. Supp.2d 722, 727 (S.D. Tex. 2000) (mem. & order). To prove housing discrimination, a plaintiff may show either disparate treatment or disparate impact on a protected class. *See Tex. Dep't of Hous. & Cmty. Affs. v. Inclusive Cmtys. Project, Inc.*, 576 U.S. 519, 524, 545–46 (2015); *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009) (stating Title VII prohibits both intentional discrimination, known as "disparate treatment," and practices that are not intended to discriminate but have a disproportionately adverse effect, known as "disparate impact"). In her First Amended Petition, Arredondo generally pleads that appellees committed familial status discrimination. Arredondo's appellate brief and response to appellees' motion for summary judgment include citation to one case about disparate treatment, *Woods-Drake v. Lundy*, 667 F.2d 1198, 1202 (5th Cir. 1982) (addressing landlord who evicted white tenants after they had African-American guests), and one case addressing disparate impact. *Davis v. New York City Hous. Auth.*, 278 F.3d 64, 67, 74 (2d Cir. 2002) (detailing litigation against the city's housing authority for policies that had the effect or "adverse impact" of racial discrimination).

### 1.    Disparate Treatment

Disparate treatment is deliberate discrimination. *Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 909 (5th Cir. 2019). "It refers to treating some people 'less favorably than others because of a protected trait.'" *Id.* (quoting *Ricci*, 557 U.S. at 577). There can be no liability under the FHA or TFHA for discriminatory treatment claims unless the protected trait motivated the challenged action. *Id.* at 910. That is, the evidence must create a reasonable inference that the protected trait was a "significant factor" in the action. *Simms v. First Gibraltar*

7

*Bank*, 83 F.3d 1546, 1556 (5th Cir. 1996); *Woods-Drake*, 667 F.2d at 1201. It is enough to show that the protected trait was a consideration and played some role in the housing decision. *See Simms*, 83 F.3d at 1556 n.30. A plaintiff can prove disparate treatment by direct or circumstantial proof, *see Crest Asset Mgmt.*, 85 F.Supp.2d at 728; "[w]hether a plaintiff presents direct or circumstantial evidence of discrimination determines the framework in which the court must analyze the claim."[3] *Treece*, 593 F. Supp.3d at 435.

Arredondo has not provided this court with any argument about whether she presented direct or circumstantial evidence of disparate treatment at the trial court, and she does not discuss the legal framework under which the court should analyze her claim. In our examination of her summary judgment evidence, we do not see direct evidence of animus against her based on familial status. In the absence of direct evidence, a claim for intentional discrimination based on circumstantial evidence is evaluated using a burden-shifting evidentiary standard, in which the plaintiff must first establish a prima facie case of disparate treatment. *See Crain v. City of Selma*, 952 F.3d 634, 641 (5th Cir. 2020). If the plaintiff provides such prima facie evidence, the burden then shifts to the defendant to articulate a "legitimate, non-discriminatory reason for the action." *Treece*, 593 F. Supp.3d at 437 (citing *Crain*, 952 F.3d at 640–41). "Then, the burden shifts back to the plaintiff to rebut the reason offered by the defendant by showing it was a 'pretext for discrimination.'" *Id*.

---

[3] "Direct evidence is 'is evidence which, if believed, would prove the existence of a fact (*i.e.*, unlawful discrimination) without any inferences or presumptions.'" *Treece v. Perrier Condo. Owners Ass'n*, 593 F. Supp.3d 422, 435 (E.D. La. 2022) (quoting *Bodenheimer v. PPG Indus.*, 5 F.3d 955, 958 (5th Cir. 1993)); *cf. Jespersen v. Sweetwater Ranch Apts.*, 390 S.W.3d 644, 653–54 (Tex. App.—Dallas 2012, no pet.) (in employment discrimination, direct evidence is evidence of what the defendant did or said that, without inference or presumption, establishes discriminatory intent). Statements that courts have found to be direct evidence of discrimination have tended to be insults or slurs against the protected group. *Jespersen*, 390 S.W.3d at 655.

The elements of a prima facie case vary depending on the facts and claims of the case. *Id.* at 439. The general elements are (1) the plaintiff is a member of a protected class under the Fair Housing Act; (2) the plaintiff was eligible for favorable treatment; (3) the defendant acted adversely toward the plaintiff; and (4) favorable treatment remained open to non-members of the protected group (*e.g.*, the housing opportunity remained available to similarly situated residents). *See id.* It is undisputed that Arredondo and her minor children are members of a protected familial class. However, Arredondo has not provided specific citation to the record, argument, or authority as to how she established a prima facie case of disparate treatment. "Adequate appellate briefing entails more than mentioning arguments in passing." *Reynoso v. Dibs US, Inc.*, 541 S.W.3d 331, 344 (Tex. App.—Houston [14th Dist.] 2017, no pet.). An appellant's brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record. Tex. R. App. P. 38.1(i). We interpret this requirement reasonably and liberally, yet also enforce briefing rules that require the appellant to put forth specific argument and analysis showing that the record and the law supports the appellant's contention. *Reynoso*, 541 S.W.3d at 334. Because Arredondo has not delineated the elements of her prima facie case or provided citations to authority or the record, she has waived her argument on appeal for intentional discrimination. *See id.*

## 2. Disparate Impact

A disparate impact claim challenges practices that have a disproportionately adverse effect on the protected group and are otherwise unjustified by a legitimate rationale. *See Tex. Dep't of Hous. & Cmt'y Affairs v. Inclusive Cmtys. Project, Inc.*, 576 U.S. 519, 524 (2015). In *Inclusive Communities*, the Supreme Court determined that an FHA disparate-impact claim should be analyzed under a three-

step, burden-shifting framework. *See id.* at 526–27. Under the first step, the plaintiff must demonstrate a robust causal connection between the defendant's challenged policy and the disparate impact on the protected class. *Id*. at 522. Under the second step, the defendant has the burden to "state and explain the valid interest served by their policies." *Id*. at 541. The third step requires the plaintiff to prove that the defendant's asserted interests "could be served by another practice that has a less discriminatory effect." *Id*. at 527. Disparate impact analysis focuses on facially neutral policies or practices that may have a discriminatory effect. *Pacheco v. Mineta*, 448 F.3d 783, 787 (5th Cir. 2006); *Tsombanidis v. W. Haven Fire Dep't*, 352 F.3d 565, 574–75 (2nd Cir. 2003). In a disparate impact claim, a plaintiff need not show the defendant's action was based on any discriminatory intent. *See Pacheco*, 448 F.3d at 787; *Huntington Branch, NAACP v. Town of Huntington*, 844 F.2d 926, 934–36 (2nd Cir. 1988).

Under step one of a disparate-impact claim, the plaintiff must provide prima facie evidence of (1) the occurrence of certain outwardly neutral practices and (2) a significantly adverse or disproportionate impact on persons of a particular type produced by the defendant's facially neutral acts or practices. *See Pacheco*, 448 F.3d at 791; *Mhany Mgmt., Inc. v. Cnty. of Nassau*, 819 F.3d 581, 617 (2nd Cir. 2016). Arredondo identifies paragraph twenty of her lease, entitled "Prohibited Conduct," as the Village's outwardly neutral practice:

> Prohibited Conduct. You, your occupants, and your guests may not engage in the following activities:
>
> . . . .
>
> (b) behaving in a loud or obnoxious manner;
>
> (c) disturbing or threatening the rights, comfort, health safety, or convenience of others (including our agents and employees) in or near the apartment community[.]

10

Arredondo also testified in her deposition that under this provision of the lease (hereinafter "Prohibited Conduct provision"), the Village issued notifications of lease violations, verbally warned her, and warned of eviction due to sounds and behavior of children at play.

In addition to an outwardly neutral practice, the basis for a successful disparate impact claim involves a comparison between two groups—those affected and those unaffected by the facially neutral policy. *Tsombanidis*, 352 F.3d at 575. This comparison must reveal that although neutral, the policy in question imposes a "significantly adverse or disproportionate impact" on a protected group of individuals. *Id*. In the "context . . . [of] housing discrimination, a wide enough contrast between the way a policy burdens members of a protected group as opposed to non-members is cognizable as a disparate impact." *R.I. Comm'n for Human Rights v. Graul*, 120 F.Supp.3d 110, 125 (D.R.I. 2015) (mem. & order); *see Treece v. Perrier Condo. Owners Ass'n*, No. 17-10153, 2020 WL 759567, at *14 (E.D. La. Feb. 14, 2020) (citing *Graul*). To make this initial comparison in "step one," plaintiffs normally rely on statistical analysis. *See Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 658 (1989); *Tsombanidis*, 352 F.3d at 575–76. Such an analysis requires a plaintiff to compare those affected by the policy with those unaffected by the policy. *Tsombanidis*, 352 F.3d at 575–76. "[A] disparate-impact claim that relies on a statistical disparity must fail if the plaintiff cannot point to a defendant's policy or policies causing that disparity." *Inclusive Cmtys. Project*, 576 U.S. at 542.

In her deposition, Arredondo estimated that some eighty percent of the Village's 600 units were occupied by families, but she did not provide a comparison between families and nonfamilies for the Village's application of the Prohibited Conduct provisions. Arredondo also has not provided any statistical

analysis. Arredondo mentioned only one other family in her deposition—her second-floor neighbors— who "didn't have any issues" living at the Village. Given Arredondo's testimony, the trial court was asked to simply infer that the Prohibited Conduct provision had a disparate impact on families, but there was no evidence to support such a conclusion. A plaintiff has not met her burden if she merely raises an inference of discriminatory impact. *Tsombanidis*, 352 F.3d at 575; *Treece*, 2020 WL 759567, at *9. Because Arredondo has not provided prima facie proof of a significantly adverse or disproportionate impact on families, she has not fulfilled step one of her familial status discrimination claims under the FHA and TFHA. The trial court thus correctly granted appellees' no-evidence motion for summary judgment on this claim.

## C.    BREACH OF CONTRACT

Arredondo also sued appellees for breach of lease. Leases are contracts and are governed by the rules that apply to contracts generally. *Ferrari v. Bauerle*, 519 S.W.2d 144, 146 (Tex. App.—Austin 1975, writ ref'd n.r.e.). A plaintiff asserting a breach-of-contract claim must prove (1) the existence of a valid contract; (2) the plaintiff performed or tendered performance as the contract required; (3) the defendant breached the contract by failing to perform or tender performance as the contract required; and (4) the plaintiff sustained damages as a result of the breach. *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 501 n.21 (Tex. 2018) (op. on reh'g). The appellees' no-evidence motion for summary judgment challenged each of those elements. *See* Tex. R. Civ. P 166a(i) ("The motion must state the elements as to which there is no evidence"). The trial court must grant the motion unless the respondent produces probative summary-judgment evidence raising a genuine issue of material fact on the challenged elements. *See id*.

Arrendondo's summary judgment evidence includes her lease with the

12

Village.[4] However, Arredondo was also required to identify a provision in the lease that she contends the Village violated and raise a fact issue as to whether appellees had a contractual duty pursuant to the lease and whether they breached this duty. *See* Tex. R. App. P. 38.1(i); *see Purvis v. Stoney Creek Cmty. Ass'n*, 631 S.W.3d 287, 291 (Tex. App.—Houston [14th Dist.] 2020, no pet.). Arredondo also generally refers to her deposition testimony about the Village's notices of violation, warnings, and threats of eviction, but she has not stated how the Village's treatment of her was a breach. *See* Tex. R. App. P. 38.1(i). She has thus failed to raise a fact issue on her breach of lease claim. The trial court correctly granted the appellees' no-evidence motion for summary judgment on Arredondo's claim for breach of lease.

## D. CONSTRUCTIVE EVICTION & BREACH OF WARRANTY

Lastly, Arredondo sued the Village and VOTL for constructive eviction and breach of warranty of quiet enjoyment. "A constructive eviction occurs when the tenant leaves the leased premises due to conduct by the landlord which materially interferes with the tenant's beneficial use of the premises." *Fidelity Mut. Life Ins. v. Robert P. Kaminsky, M.D., P.A.*, 768 S.W.2d 818, 819 (Tex. App.—Houston [14th Dist.] 1989, no writ). Texas law relieves the tenant of contractual liability for any remaining rentals due under the lease if she can establish a constructive eviction by the landlord. *Id.* "Constructive eviction essentially terminates mutuality of obligation as to the lease terms, because the fundamental reason for the lease's existence has been destroyed by the landlord's conduct." *Downtown Realty, Inc. v.*

---

[4] VOTL, which is the Village's general partner, did not sign the lease and is not listed as a party to it. In her brief, Arredondo argues there is some evidence that VOTL was acting through the Village because the property manager who signed the lease for the Village also provided an affidavit in the litigation as "the authorized representative" for both VOTL and the Village. We address the summary judgment on each of her claims without regard to this contention.

*509 Tremont Bldg., Inc.*, 748 S.W.2d 309, 313 (Tex. App.—Houston [14th Dist.] 1988, no writ).

The essential elements of constructive eviction are (1) an intention on the part of the landlord that the tenant shall no longer enjoy the premises, (2) a material act by the landlord that substantially interferes with the tenant's intended use and enjoyment of the premises, (3) an act that permanently deprives the tenant of the use and enjoyment of the premises, and (4) abandonment of the premises by the tenant within a reasonable time after the commission of the act. *Lazell v. Stone*, 123 S.W.3d 6, 11–12 (Tex. App.—Houston [1st Dist.] 2003, pet. denied). The elements of a breach of the warranty of quiet enjoyment are the same as constructive eviction. *Id.* at 12 n.1. Appellees' no-evidence motion for summary judgment challenged each of these elements.

Arredondo does not provide record citations or authority specific to each of these elements. However, the trial court specified in its order that it "read and considered each cited page of [Arredondo's] deposition listed in [her] Response to Defendants' Traditional and No Evidence Motion for Summary Judgment" before granting the appellees' motion. Similarly, this court has also reviewed these deposition pages, in which Arredondo explained that she felt harassed by the verbal warnings and written notices the Village gave her each time her downstairs neighbor complained. Mere notices to a tenant, followed by the tenant's vacating the premises, is not sufficient to constitute a constructive eviction; there must be substantial interference. *See Weissberger v. Brown-Bellows-Smith, Inc.*, 289 S.W.2d 813, 817 (Tex. App.—Galveston 1956, writ ref'd n.r.e.). Although the Village's warnings and notifications about the noise complaints upset Arredondo, this does not create a fact issue showing an intention or a material act by the landlord substantially interfering with her use of the property. *See Stillman v.*

14

*Youmans*, 266 S.W.2d 913, 915–16 (Tex. App.—Galveston 1954, no writ) (landlord's pursuit of late rent and refusal to leave premises caused tenant to abandon "all dignity" and "put her in bed for two days, physically and mentally," but did not show intent that tenant should no longer enjoy the premises). Arredondo has cited no authority, and we have found none, in which similar acts have been held to constitute constructive eviction. *See id.* at 916. Although we agree that the conditions imposed upon Arrendondo due to COVID-19 were extremely difficult, especially given the need for constant care of her children and work requirements, we are constricted by established authority. We affirm the trial court's ruling that Arredondo did not raise a fact issue on the elements of her claims for constructive eviction and breach of warranty of quiet enjoyment.

### E.   UNPAID RENT & FEES

The Village also sought a traditional motion for summary judgment on its claim for breach of contract against Arredondo. It argued that Arredondo moved out without notice and stopped paying her rent, and the Village was unable to re-rent her apartment unit for approximately four and half months. The Village's evidence in support of its motion for summary judgment included the lease, an affidavit from its property manager, and a final account statement showing $14,031.25 in unpaid rent, cleaning fees, unreturned keys and remotes, and other fees. The trial court granted this motion and awarded the Village $14,031.25 in damages.

Arredondo does not dispute the Village's computation of its damages, but instead states the Village's traditional motion for summary judgment "turn[s] on whether there is some evidence [appellees] discriminated against [Arredondo] based on her familial status." Arredondo argues that she raised a fact issue on familial status discrimination and her other claims, which in turn should preclude

the Village's traditional motion for summary judgment for breach of contract. Material breach by one party to a contract excuses the other party from any obligation to perform. *Hernandez v. Gulf Grp. Lloyds*, 875 S.W.2d 691, 693 (Tex. 1994). Constructive eviction may be pled "by way of avoidance of the obligation sued on." *Stillman*, 266 S.W.2d at 916–17. However, we have already determined that the trial court correctly granted summary judgment to appellees on familial status discrimination, constructive eviction, breach of warranty of quiet enjoyment, and Arredondo's claim for breach of lease. Thus, such claims do not result in an avoidance of the Village's claim for breach of lease. The trial court thus correctly granted the Village's traditional motion for summary judgment on its claim for breach of lease against Arredondo.

Having concluded that Arredondo did not raise a fact issue on each of her claims against appellees and that the trial court correctly granted appellees' motion for traditional and no-evidence summary judgment, we overrule Arredondo's sole issue and affirm the trial court's judgment.


/s/ Margaret "Meg" Poissant
Justice


Panel consists of Justices Wise, Jewell, and Poissant.

16